THE UNITED STATES, PLAINTIFFS IN ERROR, *v.* JOHN J. WALKER
THE UNITED STATES, PLAINTIFFS IN ERROR, *v.* ARTHUR F.
HOPKINS. THE UNITED STATES, PLAINTIFFS IN ERROR, *v.*
RICHARD LEE FEARN.

The act of Congress, passed on the 7th of May, 1822, (3 Stat. at L., 695,)
enumerated the ports of Boston, New York, Philadelphia, Baltimore, Charles-
ton, Savannah, and New Orleans, in which the collector was allowed to
receive more than three thousand dollars a year. In the non-enumerated
ports, the maximum rate of annual compensation or salary allowed to the
office was three thousand dollars.

Mobile was one of the non-enumerated ports, and consequently the salary of
the collector at Mobile was not to exceed three thousand dollars, by that act.

This act was not repealed by any of the numerous acts, called additional com-
pensation acts, which were passed from time to time between 1833 and 1841,
until one of these temporary acts, viz: the act of 1838, (5 Stat. at L., 265,)
was continued in force until otherwise directed by law by the 7th section of
the act for the relief of Chastelain and Ponvert, and for other purposes,
passed on the 21st of July, 1840. (6 Stat. at L., 815.)

The history and purport given of the several statutes respecting the compen-
sation of collectors, with the reasons which led to the passage of the act of
1841.

Nor was it repealed by the act of 3d March, 1841. (5 Stat. at L., 432.) There
is no repugnancy between the acts. Repeal by implication, upon the ground
that the subsequent provision upon the same subject is repugnant to the prior
law, is not favored in any case; but where such repeal would operate to re-
open accounts at the Treasury Department long since settled and closed, the
supposed repugnancy ought to be clear and controlling before it can be held
to have that effect.

By the true construction of this act of 1841, every collector is required to in-
clude in his quarter-yearly accounts all sums received by him for rent and
storage of goods, wares, and merchandise, stored in the public stores, for
which rent is paid beyond the rent paid by him; and if, from such accounting,
the aggregate sums received from that source exceed two thousand dollars, he
is directed and required to pay the excess into the Treasury as part and parcel
of the public money. When the sums so received from that source in any year
do not in the aggregate exceed two thousand dollars, he may retain the whole
to his own use; and in no case is he obliged to pay into the Treasury any-
thing but the excess, beyond the two thousand dollars.

Collectors of the non-enumerated ports may receive, as an annual compensation
for their services, the sum of three thousand dollars from the sources of
emolument recognised and prescribed by the act of 7th May, 1822, provided
their respective offices yield that amount from these sources, after deducting
the necessary expenses incident to the office, and not otherwise; and in a t

dition thereto, they are also entitled to whatever sum or sums they may receive for rent and storage, provided the amount does not exceed two thousand dollars; but the excess, beyond that sum, they are expressly required to pay into the Treasury as part and parcel of the public money.

THESE three cases were brought up by writ of error from the Circuit Court of the United States for the southern district of Alabama.

They were suits brought by the United States upon a collector's bond; that against Walker being a suit against the collector himself, as collector of customs for the port of Mobile, and the other two being suits against his sureties. They were therefore identical in principle, and were argued and decided together.

The facts of the case, together with the instructions given and refused by the court below, are all set forth in the opinion of the court.

It was argued by *Mr. J. Mason Campbell,* upon a brief submitted by himself and *Mr. Black,* (Attorney General,) for the United States, and submitted on printed arguments by *Mr. Smith* for the defendants in error, and by *Mr. Stanberry,* who intervened as representing the late collector at Cincinnati, whose case was identical with that of the collector at Mobile.

A detailed report of the arguments of counsel upon both sides, relative to the many statutes involved in this question, would not be interesting to the profession generally, and it is therefore omitted. It may be proper, however, to state the general propositions upon each side.

Upon the part of the United States, it was contended that the only question was as to the true construction of the act of 1841 and its effect upon the act of 1822.

1. The purpose of the act of 1841 was plainly not to increase, but to limit, the compensation of collectors. All over two thousand dollars per annum received from the sources specified in the commencement of the 5th section was to be part and parcel of the public money, and paid over as such,

and no collector was to retain for himself, by the latter part of the section, under any pretence, more than $6,000 per annum, including every possible item of charge or .claim. Congress might have aggregated into one all the sources from which collectors could derive compensation, and then limited the amount to be enjoyed from the whole, but it has not done so. It has segregated certain items by the act of 1841, and taken from the collector all but $2,000 per annum of this partial. aggregate; and when, in the sentence following, it prohibits more than $6,000 being annually enjoyed under any pretence, no other interpretation will hold than that which .makes the sources of compensation, outside of the partial aggregate, separately contribute, if they can, the residue of the amount. The construction put on the act of 1841 by the court below would have been correct, if the section had consisted only of the latter part of it, and its fault consists in ignoring and virtually repealing all that precedes.

2. The true construction of the act of 1841 being ascertained, its operation on the act of 1822 appears at once.

By the 9th section of that act, (3 Stat. at Large, 694,) the maximum compensation of collectors at Boston, New York, Philadelphia, Baltimore, Charleston, Savannah, and New Orleans, is fixed at $4,000 per annum, and by the 10th section of all other collectors at $3,000 per annum, payable, as this court ruled in Hoyt's case, out of the fees and commissions allowed by the act of 1802.

10 Howard, 135.

The mention therefore in the act of 1841 of a maximum of $6,000 from all sources is explained by the fact, that while it limited a maximum of $2,000 as regarded certain particulars, the act of 1822, in regard to the sources of emolument with which it dealt, had already prescribed a maximum of $4,000 for the collectors of the seven ports enumerated in it. But no construction can possibly stand which makes the denial of more than $6,000 per annum to the collectors of ports of the first class, amount to an increase of the compensation of those officers in other ports. The act of 1822 still operates in putting a limit to the collectors' compensation as regards the items

which it contemplated, and fixes that limit to $4,000 per annum for the collectors of the seven ports mentioned in it, and to $3,000 per annum for all other collectors, including the collector of Mobile, while the act of 1841 limits all of whatever class to a maximum of $2,000 per annum, from the items specified by it.

. The conclusion to which *Mr. Smith* came, after examining the statutes upon the subject, was the following, viz:

The error of appellant, it is submitted, arises from overlooking the fact, that the several annual acts, made permanent by that of 1840, established a maximum of four thousand dollars for all ports, applicable to then existing sources of income; and hence the error was committed, that the limit of six thousand dollars in the act of 1841 was erroneously supposed to refer to the maximum of four thousand dollars in the act of 1822. The two thousand dollars limited from particular sources, by the act of 1841, added to the limit of four thousand dollars in the act of 1840, makes the six thousand grand limit of the act of 1840. It is impossible to give any operation to the limit of 1840, or of 1841, except upon the construction of the statutes maintained for appellee; for, except upon such construction, the limit of four thousand dollars was as inoperative without, as with, the several annual acts, (made permanent by that of 1840,) and the act of 1841.

The view advanced for appellee is in harmony, too, with the general design of all the statutes on the subject; it meets the growing condition of the country, and establishes a correspondence between labor and responsibility and reward; and pursuing the policy inaugurated in 1822, it adjusts the maximum to the growth of towns and the country, and the spread of commerce; and it finally relieves the question from all the entanglements into which it is drawn by the views of Mr. Attorney General Cushing, in his opinion before referred to, and leaves each and every part and provision of each and every law a field of operation.

If these views are correct, the judgment in the case of the United States *v.* John J. Walker, and the two following cases

against his sureties, must be affirmed, because the record shows: 1. That he did not receive six thousand dollars per annum; and because two thousand dollars of his compensation in no year came from the sources to which this limit applies.

Mr. Justice CLIFFORD delivered the opinion of the court.

This case comes before the court upon a writ of error to the Circuit Court of the United States for the southern district of Alabama. It was an action of debt brought by the United States upon the official bond of the defendant as collector of the customs for the district and inspector of the revenue for the port of Mobile. He gave the bond, with sureties, on the seventh day of September, 1850, conditioned that he had truly and faithfully executed and discharged, and that he would continue truly and faithfully to execute and discharge, all the duties of the office according to law. Neglect and refusal on the part of the defendant to pay to the plaintiffs certain sums of money received by him as such collector before the commencement of the suit, beyond what he was entitled to retain as compensation for discharging the duties of the office, constituted the breaches of the condition of the bond, as assigned in the declaration.

Those balances, as claimed by the plaintiffs, amounted to the sum of thirteen thousand one hundred and eighty-four dollars and forty-two cents; and the charge was, as alleged in the declaration, that the defendant had wholly failed and refused to pay the same. As appears by the transcript, the defendant pleaded the general issue, and that he had fully performed the conditions of the writing obligatory set forth in the declaration.

To maintain the issue on their part, the plaintiffs introduced a certified copy of the bond given by the defendant, and two duly certified copies of transcripts from the Treasury Department, showing that the official accounts of the defendant had been examined and adjusted by the accounting officers of that department. According to those transcripts, the respective balances claimed by the plaintiffs, as the accounts are there

stated, had not been paid by the defendant, and remained due and payable at the time the suit was commenced.

No evidence was adduced by the defendant. He was charged in the account against him, as collector of the customs, with all sums collected from duties on merchandise, tonnage duties, hospital money, and for all sums received for rent and storage of goods, wares, and merchandise, stored in the public storehouses, for which a rent was paid beyond the rents paid by the collector. On the other side, he was credited in the account of official emoluments with the sum of three thousand dollars as the maximum rate of the annual salary or compensation allowed to the collector of that port. Further details of those accounts are omitted, for the reason that the charge for rent and storage in the account of customs, and the credit for salary in the account of official emoluments, are the only two items which come in review at the present time.

Reference to the ninth section of the act of the seventh of May, 1822, will show that Mobile is not one of the seven ports enumerated in that provision, and consequently that the maximum rate of annual compensation or salary allowed to the office under that law was three thousand dollars, as limited by the tenth section, which includes all the ports not enumerated in the previous provision. All of the accounts of the defendant were adjusted at the Treasury Department upon the principle that the act of the seventh of May, 1822, was still in force, and that the maximum rate of compensation belonging to the collector was three thousand dollars, as therein prescribed. It was insisted by the defendant that the provision in question had been repealed by subsequent acts upon the same subject, and that the maximum compensation allowed by law to the office was six thousand dollars.

Assuming that the theory of the defendant was correct, then his accounts had been improperly adjusted, and there was nothing due to the plaintiffs. On the other hand, if the charge for rent and storage in his customs account was properly made, and the maximum rate of compensation belonging to the office was only three thousand dollars, then he was

justly indebted to the plaintiffs for the whole amount of the respective balances as stated in the transcripts.

After argument, the court instructed the jury, among other things, that "the act of 3d March, 1841, was the last and controlling law as to the amount of compensation which collectors are allowed annually to retain; and that, under that enactment, the collector of this port was entitled to a compensation of six thousand dollars per annum, provided the same was yielded from the office from commissions for duties and fees for storage, and fees and emoluments, and any other commissions and salaries now allowed and limited by law, or so much from those sources, not exceeding six thousand dollars, as the office yielded."

That instruction affirmed the right of the defendant, under the act of the third of March, 1841, to a compensation of six thousand dollars per annum, or so much thereof, not exceeding that sum, as the office yielded from commissions of every description, fees and emoluments, including rents and storage, and salaries, as allowed and limited by law. Beyond question, it assumed that the tenth section of the act of the seventh of May, 1822, was repealed. Prayers for instruction were then presented by the district attorney, who was counsel for the plaintiffs. He requested the court to instruct the jury to the effect that the provisions of the act of the seventh of May, 1822, respecting the maximum compensation allowed to collectors of the customs, were not repealed by the act of the third of March, 1841, or by any other act, but that the same were in full force; 2. That the only effect the act of the third of March, 1841, had upon the former act, in so far as the same applied to a case like the present, was to create a new and additional source of emolument to such collectors, allowing them to retain not exceeding two thousand dollars for rent and storage of goods, wares, and merchandise, stored in the public stores, and for which a rent was paid beyond the rents paid by such collectors. Each of these prayers was separately presented, and separately refused by the court.

Another prayer for instruction was then presented by the district attorney. It affirmed, in effect, that it was the duty

of the defendant, as collector, whenever his emoluments in any one year exceeded three thousand dollars, after deducting the necessary expenses incident to the office, to pay the excess into the Treasury, and that the plaintiffs were entitled to recover for all such balances, thus ascertained, as were shown to be due from the evidence. Apply the first and third requested instructions to the facts of the case, and it will be seen that they affirmed the principles adopted by the accounting officers of the Treasury, in restating the accounts of the defendant; and if correct, then the whole amount of the respective balances, as stated in the transcript, was due to the plaintiffs.

Taken together, they assume that the tenth section of the act of the 7th of May, 1822, is in full force, and that the defendant had no right, under the act of the 3d of March, 1841, to retain any portion of the amount received for rent and storage. Those prayers for instructions having been refused, the district attorney then prayed the court to instruct the jury as follows:

"That under those acts, it was the duty of the defendant, as collector of the customs, whenever his emoluments exceeded three thousand dollars in any one year, after deducting the necessary expenses incident to his office, to pay the excess, if any, into the Treasury, and the plaintiffs are entitled to recover the amount of any such surplus or surpluses, if any, as may be shown by the evidence; but, in ascertaining the amount of the defendant's emoluments as such collector, the jury must exclude all moneys derived by him from fines, penalties, and forfeitures, and also all moneys derived by him from rent and storage of goods, wares, and merchandise, which may have been stored in the public storehouses, and for which a rent was paid beyond the rents paid by him as collector, unless the proceeds of such rents and storage exceed two thousand dollars; in which event, the excess over and above that sum must be taken into account by them, in computing the value of the annual emoluments."

That prayer was also refused by the court. To understand its precise effect, it is necessary that it should be read in connection with the first and second prayers, which had previ-

ously been presented and refused. When considered together, those three prayers disclose the second theory of the plaintiffs, as assumed at the trial.

Like the one assumed in the third prayer, it affirmed that the tenth section of the act of the 7th of May, 1822, was unrepealed, but conceded that the defendant had a right to retain to his own use the moneys received for rent and storage, to an amount not exceeding two thousand dollars. Under the instruction of the court, the jury returned their verdict for the defendant; and the plaintiffs excepted to the charge, and to the several refusals of the court to give the requested instructions. Three questions are presented in the case for decision, which will be briefly and separately considered:

1. Whether the tenth section of the act of the 7th of May, 1822, is repealed by any subsequent act; and if not, then,

2. What is the true construction of the act of the 3d of March, 1841, so far as the same applies to the present case?

3. Whether, by the true construction of the two acts, the defendants had a right to retain to his own use the moneys received from rent and storage, to an amount not exceeding two thousand dollars.

1. It is insisted by the defendant that the maximum prescribed by the tenth section of the act of the 7th of May, 1822, is repealed, and that, under the law regulating his compensation, the legal capacity of the office he held was six thousand dollars, subject to the condition that two thousand dollars only could be received from rent and storage. Six thousand dollars, he maintains, is the maximum under the law of the 3d of March, 1841, applicable to every collector, and that the compensation of each, within that limit, and subject to the before-named condition, is regulated solely by the amount of labor performed.

To show that the tenth section of the act of the 7th of May, 1822, is repealed, his counsel, at the argument, referred to various acts of Congress, passed subsequently to the tariff act of the 14th of July, 1832, entitled "An act to alter and amend the several acts imposing duties on imports."

They are as follows: 1833, 4 Stat., 629; 1834, 4 Stat., 698;

1835, 4 Stat., 771; 1836, 5 Stat., 113; 1837, 5 Stat., 175; 1838, 5 Stat., 264; 1840, 6 Stat., 815, private act; 1841, 5 Stat., 431, sec. 2.

By the first of those acts, usually called additional compensation acts, the Secretary of the Treasury was authorized, among other things, to pay to the collectors, out of any money in the Treasury not otherwise appropriated, such sums as would give those officers respectively the same compensation in that year, according to the importations of the year, as they would have been entitled to receive, if the tariff act of the preceding year had not gone into effect. That provision, with certain additions and modifications, which will presently be noticed, was annually re-enacted to the year 1840, when it was made permanent. For the most part, it was inserted in some one of the annual appropriation acts, and was designed to accomplish the precise object which its language describes, and nothing more.

Compensation to collectors, from the organization of the Government to the present time, has been derived chiefly from certain enumerated fees, commissions, and allowances, to which has been added a prescribed sum, called salary, and which is much less than the compensation to which the officer is entitled. Provision for such fees, commissions, and allowances, was first made by the act of the 31st of July, 1789, which also allowed to collectors certain proportions of fines, penalties, and forfeitures. 1 Stat., 64.

More permanent provision, however, was made by the act of the 18th of February, 1793, by the act to regulate the collection of duties on imports and tonnage, passed on the 2d of March, 1799, and by the compensation act passed on the same day. 1 Stat., 316, 627, 786.

By these several acts, certain enumerated fees and commissions are made payable to collectors. They are also entitled to certain proportions of fines, penalties, and forfeitures. Accurate accounts were required to be kept by them of all fees and official emoluments by them received, and of all expenses for rent, fuel, stationery, and clerk hire, which they were required annually to transmit to the Comptroller of the Treas

ury; but they were allowed to retain to their own use the whole amount of emolument derived from that source, without any limitation.   Maximum rate of compensation was first prescribed by the act of the 13th of April, 1802.   That limit was five thousand dollars, and it was applicable to all collectors.

By that act, it was provided, that whenever the annual emoluments of any collector, after deducting the expenses incident to the office, amounted to more than five thousand dollars, the surplus should be accounted for and paid into the Treasury. 2 Stat., 172.

Further regulations, as to fees, commissions, other emoluments, and salaries, were made by the act of the 7th of May, 1822, as therein prescribed.

One of those regulations was, that whenever the emoluments of any collector, for seven enumerated ports, after deducting the necessary expenses incident to the office, should exceed four thousand dollars, the excess should be paid into the Treasury, for the use of the United States.   By the tenth section, it was also provided, that whenever the emoluments of any other collector of the customs should exceed three thousand dollars, after deducting such expenses, the excess should be paid into the Treasury, for the same purpose.   They were also required to account to the Treasury for all emoluments and for all expenses incident to their offices, and those accounts were to be rendered upon oath.   Neither of the two last-mentioned acts extended to fines, penalties, and forfeitures.   3 Stat., 695. Under that act, three thousand dollars was the maximum which could be allowed to the office held by the defendant; and it is conceded by his counsel that it remained in full force to the time when the additional compensation acts before mentioned were passed.   Large additions had been made to the free list by the tariff act of the 14th of July, 1832, and the rate of duties on imports so far reduced that the sources of emolument to collectors would not yield sufficient to give them an adequate compensation.   To supply that deficiency, those additional compensation acts were passed. Much reliance is placed by the counsel of the defendant upon

the last proviso, which appears in nearly the same form in several of the acts. Take, for example, the one in the act of the 7th of July, 1838, which is the act that was subsequently made permanent. It provides that no collector shall receive more than four thousand dollars. That sum is the maximum rate of compensation allowed to collectors of the enumerated ports in the act of the 7th of May, 1822; and inasmuch as the limit of three thousand dollars, therein prescribed as applicable to the non-enumerated ports, was not reproduced in the new provision, it is insisted it was repealed, so that every collector, whether of the enumerated or non-enumerated ports, may now claim to receive an annual compensation of six thousand dollars from the sources of emolument recognised by that act, provided his office yields that amount, after deducting the necessary expenses incident to the office. To that proposition we cannot assent. On the contrary, when we look at the language of the new provision, in connection with that of the prior law, and consider the mischief that existed, the remedy provided, and the true reason of the remedy, we are necessarily led to a different conclusion. Commercial ports, where the revenue is collected, were divided by the prior law, so far as respects the compensation of collectors, into two classes, enumerated and non-enumerated. Collectors of the seven enumerated ports might receive an annual compensation of four thousand dollars, provided their respective offices produced that amount, after deducting the necessary expenses incident to the offices, from all the sources of emolument recognised and prescribed by the existing laws.

On the same principles, and subject to the same conditions, the collectors of the non-enumerated ports might receive an annual compensation of three thousand dollars. No one could receive more than that sum, and his lawful claim might be much less.

Ten years' experience under that law, prior to the passage of the tariff act of the 14th of July, 1832, had witnessed but few complaints respecting the classification of the ports, or the standard of compensation to collectors of customs, and had called for no important alteration in the laws upon that sub-

ject. Throughout that period, the rates of duties on imports were high, and nearly every article of consumption imported from other countries was taxed. Change of policy in that behalf, as carried out in the legislation of the succeeding year, affected the emoluments of collectors, and reduced the amount of net income from the sources of their emolument below the standard of a reasonable compensation. To remedy that mischief, and restore their compensation to what it would have been if no change had taken place, was the purpose for which those additional compensation acts were passed. They had the effect to change the basis of computation, so as to augment the estimated net income from the authorized sources of emolument to what it would have been if the tariff act had not passed; but they were not intended to make any change, either in the sources from which the emoluments were derived, or the maximum rate of compensation. Mention was made of the largest maximum prescribed in the prior law, not with any view to repeal or modify the other, which was applicable to the non-enumerated ports, but to exclude the conclusion that it was the intention of the provision to increase the compensation of the collectors of the principal ports beyond what it would have been if the free list had not been augmented, and there had been no diminution in the rates of duties on imports.

Suppose there was nothing in the language of the act to qualify the provision, and nothing in the history of the legislation upon the subject to aid in the exposition; still we would not think it so clearly inconsistent with the prior law as to operate as a repeal. Repeal by implication, upon the ground that the subsequent provision upon the same subject is repugnant to the prior law, is not favored in any case; but where such repeal would operate to reopen accounts at the Treasury Department long since settled and closed, the supposed repugnancy ought to be clear and controlling before it can be held to have that effect. Such was the doctrine substantially laid down by this court in Wood *v.* United States, 16 Pet., 363; and we have no hesitation in reaffirming it as applicable to the present case. Aldridge et al. *v.* Williams, 3 How., 23; U.

S. *v.* Packages of Dry Goods, 17 How., p. 93; 2 Dwarris on Stat., 533.

All of these additional compensation acts are *in pari materia* with the several acts prescribing the sources of emolument, and the whole must be construed together. When they are so considered, there is no such repugnancy as is supposed by the defendant. Collectors, as before, were still required to render an account; and the new provision expressly provides that no officer shall receive under that law a greater annual salary or compensation than was paid to him for the year the before-mentioned tariff act was passed.

2. Having disposed of the proposition chiefly relied on by the defendant, we come now to consider the second question presented for decision. That question cannot be understood without referring to the previous legislation upon the subject, and the practice that had grown up under it. Importers were allowed by the act of the fourteenth of July, 1832, to place certain goods in the public stores, under bond, at their own risk, without paying the duties. Duties on goods so stored were required to be paid one half in three months, and the other half in six months; but while the goods remained in the public stores, they were subject to customary storage and charges, and to the payment of interest at the rate of six per cent. Goods thus deposited might be withdrawn at any time in whole or in part by paying the duties on what were so recalled, together with customary storage and charges and the interest. Public stores were accordingly rented; and as the business increased, the storage received by the collector from the importers exceeded the amount paid to the owner of the stores, and there was no law requiring collectors to account for the excess, which was retained by the collectors to their own use, and went to swell the amount of their compensation.

To correct that supposed abuse, the act of the third of March, 1841, was passed. By that act, every collector was required to render a quarter-yearly account in addition to the account previously directed by law. That additional account, as prescribed in the act, was to include all sums collected or received from fines, penalties, or forfeitures, or for seizure of

goods, wares, and merchandise, or upon compromises made upon seizures, or on account of suits instituted for frauds against the revenue, or for rent and storage of goods, wares, and merchandise, which were stored in the public stores, and for which a rent was paid beyond the rents paid by the collector. As originally framed, the provision required the collector, in case the sums received by him from all those sources exceeded two thousand dollars, to pay the excess into the Treasury as part and parcel of the public money. After it was introduced, however, it was so amended and changed in its passage, that while it still directs the account to be rendered, it requires no part of the money derived from those sources to be paid into the Treasury, except what is received for rent and storage as aforesaid, and for "fees and emoluments." Every collector was required to account for fees and emoluments by previous laws; and as the account to be rendered under this act is expressly declared to be one "in addition to the account now required," there is nothing left for that part of the section directing the payment of the excess into the Treasury to operate upon, except the sums received for rent and storage.

By the true construction of the act, therefore, every collector is required to include in his quarter-yearly account, as directed in the first part of the section, all sums received by him for rent and storage of goods, wares, and merchandise, stored in the public stores, for which rent is paid beyond the rents paid by him as collector; and if, from such accounting, the aggregate sums received from that source exceed two thousand dollars, he is directed and required to pay the excess into the Treasury, as part and parcel of the public money. When the sums so received from that source in any year do not in the aggregate exceed two thousand dollars, he may retain the whole to his own use; and in no case is he obliged to pay into the Treasury anything but the excess beyond the two thousand dollars.

It is insisted, in one of the printed arguments filed in this case, that the act now under consideration has the effect to repeal the maximum prescribed in the prior act, and that every collector, under this act, is entitled to six thousand dollars as

an annual compensation, provided the office yields that sum from all the sources of emolument, including rent and storage. Collectors of the enumerated ports undoubtedly may receive four thousand dollars from the sources of emolument recognised in the act of the seventh of May, 1822, and they may also receive two thousand dollars from rents and storage. Those two sums are equal to the new maximum rate created by the act under consideration, which provides that no collector, under any pretence whatever, shall receive, hold, or retain, more than six thousand dollars per year, including all commissions for duties and all fees for storage, or fees, or emoluments, or any other commissions or salaries which are now allowed and directed by law. But it is quite clear that there is nothing in the act having the slightest tendency to show that the prior act is repealed, so far as it is applicable to the collectors of the non-enumerated ports. No new maximum is fixed to their compensation, and there is not a word in the new provision inconsistent with the tenth section of the prior act.

To suppose that the new maximum applies to the collectors of the non-enumerated ports, would be to impute an absurdity to the act, for the reason, that under no possible state of things can such collectors lawfully retain, hold, or receive, more than five thousand dollars as their annual salary or compensation, from all the sources of emolument recognised and prescribed by the two acts. It may be five thousand dollars, or it may be much less than three thousand dollars, according to the state of the importations and the amount received from rent and storage.

3. It only remains to apply the principles already ascertained, in order to determine the third question presented for decision. Collectors of the non-enumerated ports may receive, as an annual compensation for their services, the sum of three thousand dollars from the sources of emolument recognised and prescribed by the act of the seventh of May, 1822, provided their respective offices yield that amount from those sources, after deducting the necessary expenses incident to the office, and not otherwise; and in addition thereto, they are also entitled to whatever sum or sums they may receive for rent and

storage, provided the amount does not exceed two thousand dollars; but the excess beyond that sum they are expressly required to pay into the Treasury, as part and parcel of the public money.

Charges against the defendant for rent and storage must be settled in accordance with these principles. It follows, that the instruction given by the presiding justice was erroneous; and we also think that the first, second, and fourth prayers for instruction ought to have been given to the jury.

Suits were also instituted against the sureties of the defendant. Judgment was entered in the court below for the respective defendants in those suits, and the causes were removed into this court by writs of error, sued out by the plaintiffs. Those causes were submitted at the same time with the one just decided. They depend upon the same principles, and must be disposed of in the same way.

The judgment of the Circuit Court is therefore reversed in each of the three cases, and the respective cases are remanded, with directions to issue new venires.