## UNITED STATES *v.* SAMPSON.

JURISDICTION; DISTRICT COURTS OF THE UNITED STATES; CONDEMNATION OF PRIZES OF WAR; APPELLATE JURISDICTION.

1. The Supreme Court of the District of Columbia, sitting as a district court of the United States, has jurisdiction, under Sec. 762, R. S. D. C., to take cognizance of a libel for the condemnation of prizes of war and to adjudicate the question of prize or no prize, having the same jurisdiction as a prize court as other district courts of the United States.
2. In such a case an appeal does not lie to this court, but lies directly to the Supreme Court of the United States; *construing* Secs. 695 and 698, R. S. U. S., and the acts of Congress of March 3, 1891, Sec. 5 (26 Stat. 826), and February 9, 1893, Sec. 7 (27 Stat. 434).
3. Repeals by implication are never favored unless conflict or repugnance is manifest; and a general statute without negative words will not repeal the particular provisions of a former statute, unless the two acts are irreconcilably inconsistent.
4. Whether the superior courts of general jurisdiction of this District belong to the class of inferior courts provided for by the Constitution, or to the class of territorial courts that Congress may provide for and establish in the organization of territorial government, it is unnecessary to decide in a case in which the question is of the jurisdiction conferred by statute upon one of such courts of the District and how that jurisdiction is to be exercised.

5. An order dismissing an appeal to this court from an order of the
   Supreme Court of this District, sitting as a district court of the
   United States, upon the ground that this court was without juris-
   diction to entertain the appeal, was withheld pending the deter-
   mination of an appeal taken directly from that court to the Supreme
   Court of the United States, unless the appellant should take an
   appeal to the latter court from the order of this court dismissing
   the appeal, in which event the order dismissing the appeal was to
   be entered at once.

No. 1148.   Submitted December 10, 1901.   Decided March 6, 1902.

HEARING on a motion by the libellant in a proceeding to
condemn certain property captured and claimed as lawful
prize of war, to dismiss an appeal by the United States from
an order of condemnation of the Supreme Court of the Dis-
trict of Columbia, sitting as a District Court of the United
States.   *Granted, but order dismissing appeal withheld.*

The facts are sufficiently stated in the opinion.

*Messrs. McCammon & Hayden* for the motion:

1. This appeal runs from a decree entered by Mr. Justice
Bradley of the Supreme Court of the District of Columbia,
holding a special term.   The cause was one in prize.   The
question at issue was whether the Spanish cruiser *" Infanta
Maria Teresa,"* which was captured in the engagement, fought
off Santiago, Cuba, on July 3, 1898, and  certain guns and
munitions of war captured on and taken from other Spanish
vessels which were sunk or destroyed in that engagement, were
condemnable as prize of war.   By the decree it was adjudged
that they be so condemned.

The district courts of the United States have exclusive,
original jurisdiction in prize causes.   Act of September 24,
1789, 1 Stat. L. 84; *The "Paquete Habana,"* 175 U. S.
677, 685.   The jurisdiction of the court below in such cases
is derived from Section 762, R. S. D. C.   In several instances
a justice of the court below, holding a special term, has
heard and determined causes in prize.   It has never been

suggested that such justice lacked jurisdiction. *The "Metropolis,"* 7 D. C. 100; *The "Tropic Wind,"* 6 D. C. 351; *The "Albemarle,"* District Court, 146; *In re Farragut,* 7 D. C. 94.

The libellant (now appellee), a rear admiral of the United States Navy and, at the times in question, the Commander-in-Chief of the United States naval force on the North Atlantic Station, suing in his own right and in behalf of the officers and men of his command, who took part in the above captures, filed his libel in the court below, pursuant to the provisions of Section 4625, R. S. U. S. The libel recites that, on July 3, 1898, the libellant, with the fleet under his command, captured the *"Infanta Maria Teresa"* and other property which has now been condemned as prize; that prior to being sent in for adjudication, or otherwise disposed of, pursuant to Section 4615, R. S. U. S., all of this prize property was taken by the Secretary of the Navy for the use of the United States and, at the time of suit, none of it had been or could be sent in for adjudication. The libellant prayed that the *"Teresa"* and other captured property be condemned as prize; that the Secretary of the Navy be directed to deposit with the Treasurer of the United States a sum equal to their value; that a moiety thereof be awarded to the captors (Sec. 4630, R. S. U. S.); and that distribution be made in accordance with law. Sec. 4631, R. S. U. S.

After proper proceedings, the cause came on to be heard upon the libel; an answer filed by the United States whereby it claimed the whole of the captured property and denied that it was condemnable as prize, or that the captors were entitled to receive a moiety of its value, and evidence adduced by both parties. After hearing, the court entered a decree of condemnation as heretofore stated.

In prize cases, a decree which decides the question of "prize or no prize," known as the decree of condemnation, is considered final and is appealable. The hearing upon questions which relate to the distribution of the prize fund, precedent to the decree of distribution, is postponed until the liability of the captured property to condemnation has been

finally adjudged.   Hence, the decree, in this case, is appealable.

After entry of the decree two applications for appeal were filed by the United States: one for an appeal to this court, the other for an appeal to the Supreme Court of the United States.   The reason why the two applications were filed was that counsel entertained some doubt as to whether such an appeal was governed by the provisions of the act of February 9, 1893 (Sec. 7), whereby this court has appellate jurisdiction over " all final orders, judgments or decrees of the Supreme Court of the District of Columbia or any justice thereof," or by the provisions of sections 4 and 5 of the act of March 3, 1891, known as the Circuit Court of Appeals Act (26 Stat. L. 827), whereby it is provided that appeals shall be taken from district courts " *direct* to the Supreme Court (U. S.) from the *final sentences and decrees in prize cases.*"

There is an apparent conflict between the provisions of the two statutes.   It must be conceded that the decree of the court below falls within the description, " any final order, judgment, or decree of the Supreme Court of the District of Columbia, or any justice thereof," and in the absence of other legislation, an appeal from it would lie to this court.   Sec. 7, Act Feb. 9, 1893.   But it is also true that this being a cause in prize cognizable by district courts of the United States, alone (1 Stat. L. 84; *The " Paquete Habana," supra*), and within the jurisdiction of the court below only because it is authorized to sit as a district court, the decree comes within the description of those from which no appeals can be taken except directly from the court of original jurisdiction to the Supreme Court of the United States.   Sec. 5, Act of March 3, 1891.   In the two acts we find that the more specific provision, so far as appeals from decrees of the Supreme Court of the District of Columbia are concerned, is that contained in the act of 1893, but this makes no mention whatever of prize cases.   So far as the subject-matter of the appeal is concerned, the more specific provision of law, made applicable to all such appeals, without exception, is

that of the act of 1891, which, however, makes no mention of decrees, entered by a justice of the Supreme Court of the District of Columbia holding a special term, in the exercise of jurisdiction conferred upon him, but which the statute provides shall be exercised exclusively by the district courts.

Under such circumstances it is competent to inquire whether the intent of Congress, to be gathered from the several statutes, can be better effectuated by following the procedure prescribed by the act of 1891, or that prescribed by the act of 1893.

2. The effect of adhering to the procedure laid down by the act of 1891 would permit the treatment of the decree herein as a " final decree in prize," which it is. For the purposes of this and like cases, the court below would be treated as a district court of the United States, which, in effect, it is. It would prevent the delay and expense, incident to an intermediate appeal which it is the evident policy of Congress to prevent in prize cases and which are unnecessary, because the Supreme Court will ultimately hear and determine the cause, upon the whole record, and possibly further proofs taken in that court. See " Paquete Habana," 175 U. S. 677, 685–686.

In the case at bar, as in all prize cases, the value of the property claimed as prize was not set up in the libel, nor was it fixed by the decree of condemnation. In fact, the value of it is still an issue in the cause upon which a hearing and decision will not be had until the question of " prize or no prize " has been finally adjudicated. By following the procedure laid down in the act of 1891, the right of appeal to the Supreme Court would not be subjected to any pecuniary limit.

It is true that a number of cases, which grew out of captures made during the Civil War, were heard in the first instance by a justice of the court below, holding a special term, and thereafter were heard, on appeal, by the general term of the court, before appeals were taken to the Supreme Court of the United States; but this was prior to the passage of the act of 1891.

If Congress intended that the nature or subject-matter of a case alone should determine the appellate jurisdiction,

there is no reason for supposing that the pecuniary limitation was abolished while other provisions of law affecting the appellate jurisdiction were permitted to remain in force. The Supreme Court's opinion shows that this decree should be regarded as a final decree in prize, rather than a decree of a justice of the Supreme Court of the District of Columbia.

It might be said that if a direct appeal to the Supreme Court (U. S.) can be taken from the decree herein, then a direct appeal must lie from every other decree of a justice, holding a special term of the court below, which belongs to one of the classes enumerated in section 5 of the act of 1891. This we submit does not follow. For instance, take "convictions of capital or otherwise infamous crimes," one class of cases, in which the act of 1891 prescribes a direct appeal. A justice of the court below in pronouncing sentence upon such a conviction would not exercise the jurisdiction of a district or circuit court of the United States, but one branch of the jurisdiction, especially conferred upon him. Sec. 763, R. S. D. C. In like manner take a case of any other class, wherein only direct appeals from a district court are allowed by the act of 1891, such as those where the jurisdiction of the court is in issue, or where the construction of the Constitution is involved. In adjudicating these, the court below would ordinarily exercise the jurisdiction conferred upon it, specifically, by Sec. 763, R. S. D. C., as amended by the act of February 27, 1877 (19 Stat. L. 253) and by Sec. 764, R. S. D. C. It is only in a case like that at bar, where the court below requires jurisdiction, which is vested exclusively in the district courts of the United States, and for the time being becomes a district court, that the provisions of the act of 1891 should be applied to appeals from its decrees. A ruling in accord with our contention would not affect the appellate jurisdiction of this court in admiralty cases, in general. The circuit courts of appeals have appellate jurisdiction over decrees of the district courts in such cases. This court bears the same relation to a special term of the Supreme Court of the District of Columbia that a circuit court of appeals bears to a district court of the United

States, embraced within the territorial limits of its jurisdiction.

3. The result of adopting the procedure laid down in the act of 1893 would ignore the intent of Congress to regulate appeals according to their subject-matter, irrespective of other conditions. The right of appeal to the Supreme Court of the United States would be subject to the pecuniary limitation prescribed by section 8 of the act, for a capture made as prize has never been treated as an authority exercised under the United States, and international difficulties might follow, if it were so considered. " *The Florida,*" 101 U. S. 37. The evident wish of Congress to remove any pecuniary limitation and to provide a method for the speedy adjudication of prize cases, which always involve the interests of many persons and usually present questions of an international rather than of a domestic nature, would be defeated.

*Mr. Charles C. Binney,* Special Attorney for the United States, opposed:

1. It is evident that if the present action had been brought in any district court of the United States, the appeal would have had to be taken to the Supreme Court of the United States under the act of March 3, 1891, section 5 (26 Stats. 826), which section names six classes of cases in which " appeals or writs of error may be taken from the district courts or from the existing circuit courts direct to the Supreme Court," one of these classes being " from the final sentences and decrees in prize cases." In regard to such cases this provision of the Circuit Court of Appeals act merely reenacted the law as it had previously existed under section 695 of the Revised Statutes.

The present action, it is to be observed, was not brought in any district court of the United States, strictly speaking, but in the Supreme Court of the District of Columbia, under Revised Statutes of the District of Columbia, Sec. 762.

It is clear, however, that the character of the present action differs in no respect from what it would have been if it

had been brought in a district court of the United States. It was brought in the Supreme Court of the District of Columbia merely as a matter of convenience. As far as the character and subject-matter of the case is concerned, no possible reason exists why the right of appeal should differ in the present case from what it would have been if the case had been brought in a regular district court of the United States.

Such a difference may be thought an anomaly, but the mere fact that it is an anomaly is not a conclusive reason for holding that Congress did not intend it. A similar anomaly exists in regard to appeals in claims cases. As is well known, appeals from judgments of the Court of Claims lie directly to the Supreme Court of the United States, and this has been the rule ever since the Court of Claims was empowered to render final judgments. Under the act of March 3, 1887 (24 Stats. 505), the district and circuit courts of the United States are given concurrent jurisdiction with the Court of Claims in suits against the United States, but the judgments rendered by the district and circuit courts in such cases are reviewed by the circuit courts of appeal, precisely as in the case of other judgments of the district and circuit courts, and writs of error lie as well as appeals. *Chase* v. *United States,* 155 U. S. 489.

As regards the status of a special term of the Supreme Court of the District of Columbia, held under section 762 (Rev. Stats. D. C.), it is noticeable that the act of March 3, 1863, Sec. 3 (12 Stats. 763), authorized any one of the justices of that court to hold " a district court of the United States for the District of Columbia in the same manner and with the same powers and jurisdiction possessed and exercised by *other* district courts of the United States." The language of section 762 differs from this, but the intent may be the same, for section 758 (Rev. Stats. D. C.) provides that the special term held as the United States district court for the District of Columbia shall be holden on the first Mondays in December and June in every year.

This would seem to be a declaration that a special term of court, held under section 762, constituted " the United States

district court for the District of Columbia." Section 753 also speaks of "district courts," and although that section declares that "the several general terms and special terms of the circuit courts, district courts, and criminal courts authorized by law are declared to be, severally, terms of the Supreme Court of the District of Columbia," and that the judgments, decrees, etc., of such terms and courts are and shall be deemed judgments, decrees, etc., of the Supreme Court, yet that section does not affect "the right of appeal as provided by law," so that the question of what is the right of appeal provided by law must be determined without reference to section 753.

The words "powers and jurisdiction," in section 762, undoubtedly mean the power and jurisdiction not only to hear a cause which, outside the District of Columbia, would come before a district court, but also in such a cause to enter a decree of precisely the same character and effect as that of a district court. See *Durousseau* v. *United States,* 6 Cranch, 311.

Following this reasoning of Chief Justice Marshall in that case, it is clear that Congress must have intended to subject the judgments and decrees of a justice of the Supreme Court of the District of Columbia, sitting with the powers and jurisdiction of a district court, to the same revision to which the judgments and decrees of a district court were subject, unless or until some other mode of revision was provided for. Hence, unless there is some other provision for an appeal, the appeal from judgments and decrees rendered by the Supreme Court of the District of Columbia in cases brought under section 762, Revised Statutes of the District of Columbia, would lie to this court only in cases such as would, if brought in a district court, be appealed to a circuit court of appeals, and that in all other cases the appeal would lie directly to the Supreme Court of the United States.

2. At this point, however, we are met by the comprehensive language of section 7 of the act of February 9, 1893 (27 Stats. 434): "That any party aggrieved by any final order, judgment, or decree of the Supreme Court of the District of

Columbia, or of any justice thereof, may appeal therefrom
to the court of appeals hereby created; and upon such ap-
peal the court of appeals shall review such order, judg-
ment, or decree, and affirm, reverse, or modify the same as
shall be just."

The act from which the above words are quoted, unlike the
act establishing circuit courts of appeal, makes no provision
whatever for any appeals to be taken directly to the Supreme
Court of the United States, and while it may very well be
that Congress, at the time of the passage of the act, did not
have in mind the matter of appeals in prize cases, no prize
cases having come before any United States court for a num-
ber of years, yet the words " or of any justice thereof " are
significant as indicating that Congress did bear in mind the
fact that under section 762 of the Revised Statutes of the
District of Columbia a single justice of the Supreme Court
of the District of Columbia could hold a special term with the
same powers and jurisdiction as possessed and exercised by
district courts of the United States.

The Circuit Court of Appeals Act names six classes of
cases in which appeals or writs of error lie directly to the Su-
preme Court of the United States, and prize cases constitute
only one of those classes.  If the Supreme Court of the
United States exercises direct appellate jurisdiction as to one
of those classes of cases, it must do so for all; for instance, in
cases of conviction of a capital or otherwise infamous crime,
or in any case in which the constitutionality of any law of
the United States is in question; yet it has never been held
that an appeal lay directly to the Supreme Court of the
United States in such cases.

The act of August 5, 1886, section 5 (24 Stats. 335), pro-
vided expressly that the Supreme Court of the United States
should have jurisdiction of appeals from the final decree of
the Supreme Court of the District of Columbia in the Poto-
mac Flats cases; yet in spite of the express character of this
enactment it was evidently believed that, under the act of
February 9, 1893, the appeal would lie to this court, and
hence the act of January 7, 1895 (28 Stats. 599), provided

that appeals in the Potomac Flats cases should be taken to the Supreme Court of the United States " in the same manner as if said act establishing a court of appeals for said district had not been passed." This is clear evidence of the opinion of Congress as to the breadth of the appellate power of this court under the act of February 9, 1893.

It is true that actions in prize brought in the regular district courts of the United States are appealable without reference to the amount of money involved, and by the operation of the act of February 9, 1893, such actions, if brought in the Supreme Court of the District of Columbia, are prevented from ever reaching the Supreme Court of the United States at all, if the amount involved does not exceed $5,000, unless possibly under the clause authorizing appeals without regard to the amount in dispute, in cases in which " the validity of an authority exercised under the United States " is drawn in question. It may be suggested that every case where there is a dispute as to whether a vessel or other property was properly taken as lawful prize of war for the benefit of captors must necessarily draw in question the validity of an authority exercised under the United States in making the capture; but this does not exhaust the category of prize cases. There may be cases where, although the validity of the authority exercised in making the capture is unquestioned, the relative force of the captors and the enemy is disputed, or the respective rights of vessels claiming to share in the prize are to be determined. Such cases, apparently, if brought in the District of Columbia, cannot reach the Supreme Court of the United States at all if the amount involved is less than $5,000. This is certainly an anomaly, but the point is one of so little practical importance that it can hardly be a reason for holding that Congress, when using the broad language of the District Court of Appeals act, *intended* that it should not apply to prize cases. See *The Paquete Habana,* 175 U. S. 677, 685.

3. It is therefore submitted that in spite of the fact that in the nature of such a case as the present there is no reason why the appeal should lie to this court, and not, as in other actions

in prize, directly to the Supreme Court of the United States, there is still no escape from the plain and comprehensive language of section 7 of the act of February 9, 1893; and hence that this court should dismiss the present motion and entertain jurisdiction of the appeal.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This appeal is brought into this court from the decree passed in the court below, sitting in special term as a district court of the United States for the District of Columbia; and the decree appealed from is one of condemnation of certain property captured and claimed as lawful prize of war. By the libel it is alleged that the Spanish cruiser *Infanta Maria Teresa* was captured in the naval engagement fought off Santiago, Cuba, on July 3, 1898, and that certain guns and munitions of war were also captured on and taken from other Spanish vessels which were sunk or destroyed in the engagement; all of which captures, as alleged, were condemnable as lawful prize of war.

The United States appeared to the proceeding and filed an answer to the libel; and, by the answer, it is denied that the property captured is liable to condemnation, or, if condemnable, it is denied that the captors are entitled to receive a moiety of its value. Evidence was produced, and, upon hearing, a decree of condemnation was entered. On the question of prize or no prize, the decree of condemnation is in the nature of a final decree, and therefore subject to the right of appeal. There being doubt, however, in the minds of counsel or proctors of the parties, as to what court the appeal would lie, there were two appeals entered; one to the Supreme Court of the United States, and the other to this court. The transcript having been brought in, the appellee, the libellant in the court below, has moved that the appeal to this court be dismissed, upon the ground that it does not properly lie to this court.

I do not understand that there is any question made as to the want of competent jurisdiction of the justice of the Su-

preme Court of the District, holding the special term at which the decree appealed from was made, to take cognizance of the libel and to adjudicate the question of prize or no prize, and to enter a decree accordingly.

This power and jurisdiction are supposed to be conferred by the language employed in Sec. 762, Rev. Stats. D. C., which is as follows:

" Section 762. Any one of the justices may hold a special term, with the same powers and jurisdiction possessed and exercised by district courts of the United States." This is the substitute, as provided in the Revised Statutes, for the old and independent district court of this District, established under the act of Congress of 1802. *Ex parte Bradley,* 7 Wall. 371.

The district courts of the United States have been, since the organization of the government, invested with the powers and original jurisdiction over captures and seizures, as subjects of prize. By the Judiciary Act of 24th September, 1789, Chap. 20, Sec. 9, they were invested with exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, including all seizures under imposts, navigation, or trade laws of the United States, where the seizures are made upon the high seas; and also of all other seizures made under the laws of the United States. 1 Kent Com. 304. If, therefore, the justice holding the special term of the Supreme Court of the District, as a district court, with the *same powers and jurisdiction possessed and exercised by other district courts of the United States,* it would seem to be too clear for any question to be made, that the special term so held for the exercise of the jurisdiction designated, must be regarded and treated as a prize court in the same sense, and to the like extent, of the other district courts of the United States. Assuming then as clear, that the justice holding the special term had ample jurisdiction to adjudicate the question of prize or no prize, and to enter a decree of condemnation, the question then arises as to what court does the right of direct appeal exist from such decree of condemnation? It is not pretended

that there is any concurrent right of appeal in such case to different courts. The right of appeal from the district courts, in matters of prize, has been direct to the Supreme Court of the United States down to the time of the passage of the act of Congress of Feb. 9, 1893, and is direct to that court still, in all cases, unless it be changed or modified as to the District of Columbia, by the act of Feb. 9, 1893.

Whether this act of 1893, as to the District of Columbia, has effected such change in the right of appeal, depends upon the language of the pre-existing general statutes upon the subject, as well as upon that of the act of 1893. It is therefore necessary to refer specially to the several provisions of the statutes regulating the right of appeal from decisions in cases of prize.

The Revised Statutes United States, title Judiciary, provides — " Sec. 695. An appeal shall be allowed to the Supreme Court from all final decrees of any district court in prize causes, where the matter in dispute, exclusive of costs, exceeds the sum or value of two thousand dollars; and shall be allowed, without reference to the value of the matter in dispute, on the certificate of the district judge that the adjudication involves a question of general importance. And the Supreme Court shall receive, hear and determine such appeals, and shall always be open for the entry thereof."

Section 698 provides for transmitting to the Supreme Court a transcript of the record and proofs in cases of prize or no prize; and also provides that new evidence in admiralty and prize causes may be received in the Supreme Court. And, by section 1009 it is provided, that " Appeals in prize causes shall be made within thirty days after the rendering of the decree appealed from, unless the court previously extends the time, for cause shown in the particular case: *Provided* That the Supreme Court may, if in its judgment the purposes of justice require it, allow an appeal in any prize cause, if it appears that any notice of appeal, or of intention to appeal was filed with the clerk of the district

court within thirty days next after the rendition of the final decree therein."

It thus appears that all appeals from the district courts in matters of prize was direct to the Supreme Court of the United States, prior to the act of Congress of March 3, 1891, entitled "An act to establish circuit courts of appeals and to define and regulate in certain cases the jurisdiction of the courts of the United States, and for other purposes." By the 5th section of that act it is provided " that appeals or writs of error may be taken from the district courts or from the existing circuit courts *direct* to the Supreme Court in the following cases;" and, among the cases enumerated as appealable *directly* to the Supreme Court, is that " from the final sentences and decrees in prize causes."

This statute, as it applies to appeals in cases of prize, was subject to critical examination, in the light of all existing legislation upon the subject, by the Supreme Court in a prize proceeding, in the case of *The Paquete Habana,* 175 U. S. 677. In that case it was held that the Supreme Court of the United States has, by virtue of this statute, jurisdiction of appeals from *all final sentences and decrees in prize causes, without regard to the amount in dispute,* and without any certificate of the District judge as to the importance of the particular case. It construed the statute as being a full and complete regulation of the subject, and *as exclusive* of all other regulations of the particular class of cases provided for. In stating the conclusion upon the examination of the statute, the court said: —" We are of opinion that the act of 1891, upon its face, read in the light of settled rules of statutory construction, and of the decisions of this court, clearly manifests the intention of Congress to cover the whole subject of the appellate jurisdiction from the district and circuit courts of the United States, so far as regards in what cases, as well as to what courts appeals may be taken, and to supersede and repeal, to this extent, all the provisions of earlier acts of Congress, including those that impose pecuniary limits upon such jurisdiction, and,

as part of the new scheme, to confer upon this court juris-, diction of appeals from all final sentences and decrees in prize causes, without regard to the amount in dispute, and without any certificate of the district judge as to the importance of the particular case."

It is conceded that if the right of appeal had to be determined according to the act of March 3, 1891, as construed by the Supreme Court, the appeal would have to go to that court, if to any final court of review, sitting as the highest prize court of the United States. But it is contended on behalf of the United States, that the act of March 3, 1891, has been changed or modified, so far as the District of Columbia is concerned, by the subsequent act of Congress of February 9, 1893, providing for the organization of this court. It is contended that, by the general and comprehensive terms employed in section 7 of this latter act of 1893, declaring " that any party aggrieved by any final order, judgment or decree of the Supreme Court of the District of Columbia, or of any justice thereof, may appeal therefrom to the Court of Appeals hereby created; and upon such appeal the court shall review such order, judgment or decree, and affirm, reverse, or modify the same as shall be just," the present appeal is fully authorized, and that it is properly here. It must be observed, however, that this general provision of the act of 1893 makes no mention or reference to appeals in cases of prize, which have always been regulated by special provision; and as Congress had only recently before the passage of the act of 1893, made special and particular provision for the exercise of the right of appeal from the final sentences and decrees *in all cases of prize directly* to the Supreme Court of the United States,— that tribunal which has, from the commencement of the government, most appropriately exercised such appellate jurisdiction,— it is difficult to suppose that Congress intended to change or modify to any extent, by mere implication, the general rule prescribed, and to make for this jurisdiction alone a special and different rule from that which applies to all the rest of the country.

There is really no repugnancy between the acts; and the principle of construction is well settled that repeals by implication are never favored, unless conflict or repugnancy is manifest. As said by the Supreme Court, in the case of *McCool* v. *Smith,* 1 Black, 459, 470, " The leaning of the courts is against the doctrine of implied repeal, if it be possible to reconcile the two acts of the legislature together." It is but a reasonable presumption that the legislature did not intend to keep really conflicting enactments in the statute book, or to effect so important a measure as the repeal of a law without expressing an intention so to do. Such an interpretation, therefore, is not to be adopted unless it be inevitable. *United States* v. *Walker,* 22 How. 299 ; *United States* v. *Sixty-seven Packages,* 17 How. 85.

It has been decided in many cases, and the principle is laid down as unquestionable in text-books of high authority, that a general statute without negative words, will not repeal the particular provisions of a former statute, unless the two acts are irreconcilably inconsistent. Dwarris on Statutes, 532; Sedgw. Stat. & Const. Law, 123; *Brown* v. *County Com.,* 21 Pa. St. 37. The reason and philosophy of the rule is stated to be, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all. There are many instances to be found in the books of the application of this rule of construction; as, for example, where an act of Parliament had authorized individuals to inclose and embank portions of the soil under the river Thames, and had declared that such land should be " free from all taxes and assessments whatsoever." The land tax act subsequently passed, by general words embraced all the land in the kingdom; and the question arose, whether the land mentioned and exempted by the former act had been legally taxed; and

the Court of King's Bench held, that the tax was illegally assessed. Lord Chief Justice Kenyon said, "It cannot be contended that a subsequent act of Parliament will not control the provisions of a prior statute, if it were intended to have that operation. But there are several cases in the books to show, that where the intention of the legislature was apparent that the subsequent act should not have such an operation, then, even though the words of such statute, taken strictly and grammatically, would repeal the former act, the courts of law, judging for the benefit of the subject, have held that they ought not to receive such a construction." *William* v. *Pritchard,* 4 D. & E. 2; Dwarris on Statutes, 514.

As I have said, there is really no conflict or repugnancy whatever between the act of 1891 and that of 1893; but there is even a stronger reason for supposing that the general rule prescribed by the former act was not intended to be changed or modified as applied to the courts of this District, by the subsequent act of 1893, than the mere absence of conflict or repugnancy between the two acts; and that is, the effect, in the ultimate right of appeal, produced upon the judgment on appeal to this court. We cannot suppose it to have been the intention of Congress in passing the act of 1893, to give the right of appeal to this court in cases of prize, and to make the judgment on such appeal final and conclusive in all cases where the amount in dispute is $5,000, or less; and thus preclude the right of review in such cases by the Supreme Court,— the highest prize court of the country. But such would appear to be the effect of an appeal to this court. For by Sec. 8 of the act of 1893, it is provided "that any final judgment or decree of the said Court of Appeals may be re-examined and affirmed, reversed, or modified, by the Supreme Court of the United States, upon writ of error or appeal, in all cases in which the matter in dispute, exclusive of costs, shall exceed the sum of five thousand dollars, in the same manner and under the same regulations as heretofore provided for in cases of writs of error on judgments or appeals from decrees, rendered in the Supreme Court of

the District of Columbia; and also in cases, without regard to the sum or value of the matter in dispute, wherein is involved the validity of any patent or copyright, or in which is drawn in question the validity of a treaty or statute of or authority exercised under the United States." The right of appeal thus given from the judgments or decrees of this court to the Supreme Court of the United States is upon terms and conditions quite different from the right of appeal in prize cases to the Supreme Court, under the act of 1891. Under this latter act the right of appeal in all cases is given to the Supreme Court without regard to the amount in dispute; but, as we have seen, the right of appeal from this court to the Supreme Court, with certain exceptions that do not apply here, can only be exercised when the amount in dispute exceeds $5,000. This 8th section of the act of 1893 embraces all the cases, or class of cases, in which an appeal can be taken to the Supreme Court from this court; and I am very clearly of opinion that this general provision does not, and was not intended to, embrace appeals from this court to the Supreme Court in prize causes.

It is suggested that the special term, exercising the same powers and jurisdiction possessed and exercised by the district courts of the United States, is not a district court of the United States, in the sense and meaning of the district courts mentioned in section 5 of the act of March 3, 1891, and from which appeals are given to the Supreme Court of the United States; and hence no appeal will lie to the latter court from the decree passed at the special term, under the act of 1891. But that construction is certainly too restricted and narrow to be sound or reasonable, and no authority has been produced to support it. On the contrary, I think there is reliable authority to show that the exercise of the powers and jurisdiction of the district courts of the United States by the justice holding the special term, constitutes that court, to all intents and purposes, a district court, with the powers and jurisdiction of the district courts mentioned in the 5th section of the act of 1891.

The superior courts of general jurisdiction of the District of Columbia have been repeatedly held to be courts of

the United States, as distinguished from mere territorial courts. But whether the court belongs to the class of inferior courts provided for by the Constitution, or belongs to the class of territorial courts that Congress may provide for and establish in the organization of territorial government, can make no difference in the right of appeal in a case like the present. The question is, what jurisdiction has been conferred upon the court, and how that jurisdiction is to be exercised. *Ex parte Cooper,* 143 U. S. 472, 494, 512.

In the case of *Durousseau* v. *United States,* 6 Cranch, 307, the question presented was quite analogous to that presented in this case, as to the manner of conferring jurisdiction. In that case the act of Congress erecting Louisiana into two territories established a district court in the territory of Orleans, consisting of one judge who, as it was declared, " should, in all things have and exercise the same jurisdiction and powers which were, by law, given to, or might be exercised by, the judge of Kentucky district." On writ of error to the district court for the district of New Orleans, it was contended on behalf of the United States, that the Supreme Court had no jurisdiction over the case, because there could be no writ of error to or appeal from the decisions of such district court of New Orleans to the Supreme Court; — such right of appeal not having been specially provided for.

But that contention was not supported by the Supreme Court, and the motion to dismiss was denied; the court holding that the writ of error would lie to the New Orleans district court the same as to the Kentucky district court. The court said that the contention of the United States was founded upon an alleged restriction of the right to a writ of error to the district court, but that such implication ought not to be made for the purpose of defeating the intent of the legislature. The decision in that case shows that it is competent to the legislature to provide that the nature and extent of the judicial power conferred upon a particular court shall be ascertained and measured by reference to that conferred upon another court; and that the classification and

D. C.]                          Concurring Opinion.

denomination of the court will be according to the nature and extent of the powers and jurisdiction with which it may be thus invested.

Upon full consideration, I am of opinion, for the reasons stated, that this appeal has been improvidently and without legal warrant taken to this court, and it must, therefore, be *dismissed.*

But, with a view of preserving the appeal taken to this court, in the event that the Supreme Court should decide that such appeal was rightfully taken to this court, and not to the Supreme Court direct, I think it would be proper to withhold the order dismissing the appeal until the question can be passed upon by the Supreme Court, on an appeal from the District Court, unless it be desired by the appellant to take an appeal to the Supreme Court from the order dismissing this appeal,— in which case the order of dismissal will be entered at once.

Mr. Justice MORRIS, concurring:

In these cases I am not satisfied that we have not jurisdiction. But to hold that we have jurisdiction would be to deny the jurisdiction of the Supreme Court of the United States. If such holding be the correct one, I prefer that it should come from the Supreme Court, and not from us. It seems to me to be appropriate that, where there is a doubt, that high tribunal should itself determine the point. Moreover, it would seem that by our denial of our own jurisdiction at this time the interests of justice would be best subserved. For these reasons I concur with the Chief Justice in the ruling that the appeals in these cases lie directly to the Supreme Court of the United States, and not to this court.

Mr. Justice SHEPARD dissented.