## UNITED STATES *v.* LAWSON.

The act of Feb. 26, 1867 (14 Stat. 410), abolishing a former collection district in Maryland, and forming from a portion thereof a new district, provides that the collector "shall receive an annual salary of $1,200." A. held the office of collector from April 19, 1867, until April 1, 1875. On July 18, 1867, the Commissioner of Customs required him, in writing, to account for *all* fees received by him as such. He accordingly thereafter paid them into the treasury. *Held,* 1. That in addition to his salary A. was entitled to the fees and emoluments allowed to such officers by pre-existing legislation. 2. That having paid them into the treasury pursuant to a peremptory order of his superior officer he was not thereby precluded from recovering them in a suit against the United States.

APPEAL from the Court of Claims.

The facts are stated in the opinion of the court.

*The Solicitor-General* for the United States.

*Mr. John Scott, Jr.,* for the appellee.

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Compensation to collectors of the customs from the organization of the government to the present time has been chiefly derived from certain enumerated fees, commissions, and allowances, to which is added a prescribed sum, called salary, much less than a reasonable compensation for the service required of the officer. 1 Stat. 64, 316, 627, 786.

Sufficient appears to show that by these several acts certain enumerated fees and commissions were made payable to the collectors of the customs, and that they were also entitled to certain proportions of fines, penalties, and forfeitures. By the same acts they were required to keep accurate accounts of all fees and official emoluments by them received, and of all expenses for rent, fuel, stationery, and clerk-hire, and to report the same annually to the Comptroller of the Treasury, but

they were allowed to retain to their own use the whole amount of the emoluments collected from those sources, without any limitation.    Maximum rate of compensation was subsequently prescribed, which was $5,000, and it was made applicable to all collectors without any discrimination.    2 id. 172.

It was provided by that act that whenever the annual emoluments of any collector, after deducting the expenses incident to the office, amounted to more than $5,000, the surplus should be accounted for and paid into the treasury.    Districts for the collection of the customs were, at a later period, divided into two classes, usually denominated the enumerated and the non-enumerated ports, and the maximum rate of compensation to collectors was diminished.    3 id. 695.

Under that act the maximum for the enumerated ports was $4,000 and for the non-enumerated ports $3,000, and the provision in respect to both classes was that the excess, after deducting the expenses incident to the office, should be paid into the treasury as public money.

For a considerable period of time these regulations were satisfactory, but when the policy was changed, the free list much enlarged, and the rates of duty reduced, experience showed that the emoluments of collectors from those sources were not sufficient to give them a reasonable compensation.    Temporary expedients were resorted to for several years by the passage of an annual compensation act, as will be seen by reference to the acts of Congress during that period.    *United States* v. *Walker,* 22 How. 299–308; *United States* v. *Macdonald,* 5 Wall. 647, 655.

Importers, under various antecedent acts of Congress, were allowed to place certain goods in the public stores under bond, at their own risk, without the payment of the duties, until the goods were withdrawn.    Public stores were accordingly rented, and as the business increased, the rent and storage received by the collector of the merchants making deposits in the stores exceeded the amount paid to the owners of the same, and there was no law requiring the collector to account for the excess. Congress interposed and regulated the subject.    5 Stat. 432; Rev. Stat., sect. 2647.

By that enactment collectors are required to include in their

quarterly accounts all sums received for rent and storage in the public stores beyond the rents which are paid to the owner, and if the excess in any one year exceeds $2,000, it is made their duty to pay such excess into the treasury as part and parcel of the public money. *United States* v. *Macdonald,* 2 Cliff. 270, 282.

Two thousand dollars of the amount, under the act of Congress then in force, might be retained by the collector in addition to the amount received from other lawful sources of emolument, provided the latter did not exceed the maximum rate allowed to the office. Receipts from the other sources of emolument were to be accounted for as before; but the effect of the new provision was to add $2,000 to the compensation of a collector, if his office earned that amount from rent and storage. Custom dues of every kind received by a collector are now required to be credited in his quarterly accounts, no matter from what source of emolument the money is derived; and the provision is, that whenever the emoluments of any collector, other than one of the enumerated ports, "shall exceed $3,000, the excess shall in every such case be paid into the treasury for the use of the United States; but the provision does not extend to fines, penalties, or forfeitures, or the distribution thereof." Rev. Stat. 2691.

Apply the rule prescribed in that provision to the case before the court, and it is clear that the collector, if the compensation he received from other sources of emolument, after deducting the incidental expenses of his office, amounted to $3,000, would not have a right to retain any portion of the excess received for rent and storage beyond what he paid to the owners of the stores rented. His right in such a case, provided the aggregate of his receipts from the other sources of emolument, after deducting the incidental expenses of his office, was insufficient to give him the maximum compensation allowed, would be to retain enough from the amount derived from that source to make up the deficit.

Judgment was rendered in favor of the petitioner, and the United States appealed to this court. No formal assignment of errors is filed, but the proposition submitted in argument is that the petitioner voluntarily paid the amount claimed into

the treasury, and that he cannot now maintain any action to recover it back.

Nothing appears in this case to warrant the conclusion that the petitioner ever collected any thing for rent and storage, or that any such matters are in controversy in this case, as will hereafter more fully appear.

Special findings were made by the court to the effect following: That the petitioner held the office of collector of the port of Crisfield.from April 19, 1867, to April 1, 1875, and that he received from the United States during that period a salary at the rate of $1,200 per annum; that on the 18th of July subsequent to his appointment the Commissioner of Customs wrote him, acknowledging the letter of the petitioner of a prior date, and stated that the $1,200 salary given him by the act creating his district constituted his entire compensation, and that he was required to account for all fees.

Directions could hardly be more peremptory; and the Court of Claims finds that in consequence of that letter the petitioner accounted for and paid into the treasury all moneys collected by him as duties on imports and tonnage, except what was expended for office-rent, fuel, and expenses, and for the services of his deputy and clerks.

During his term of office he collected as fees $9,066.43, of which he paid out $623.48 for office-rent, fuel, and expenses, and $2,492.29 for the services of his deputy and clerks, for which sums he was allowed credit in his accounts.

None of these matters can be controverted; and the fifth finding of the court below shows the balance of the sum collected as fees, to wit, the sum of $5,950.66, was by him, without protest, paid into the treasury of the United States. All of the facts are stated in the findings of the court; and they also find that the petitioner, under the acts of Congress, collected tonnage taxes to the amount of $11,839.23, and that he paid the same to the government.

It appears that the district in which the petitioner is collector was formed out of a part of a district created by the original collection act, and that it was continued as such until the passage of the act abolishing it, and that the act creating the new district provided that the collector of the

same shall receive an annual salary of $1,200. 1 Stat. 33; 14 id. 410.

Much discussion of the proposition that the petitioner would have been entitled to all he demands if he had seasonably claimed it or made the payment, when it was officially required, under protest, is certainly not required, as it is not denied in argument; but if it were required to give the authority for the conceded right, the effort would not be attended with much difficulty. Express provision was made by the second section of the Compensation Act, that collectors might demand and receive the fees therein prescribed. They were also given a salary of $250, and were required to keep an accurate account of all fees and official emoluments and all expenditures for rent, fuel, stationery, and clerk-hire, and to transmit the same under oath to the Comptroller of the Treasury. 1 id. 706–708. Corresponding provision is now contained in the Revised Statutes which is applicable to the case under consideration. Rev. Stat., sect. 2654.

Percentages for the collection of duties of import and tonnage were also allowed by the original act, and are contained in the Revised Statutes. Sect. 2659. Three per cent is allowed to the collector of this port, and he is also entitled to a salary of $200 by the original act, which for certain purposes may still be regarded as in force. Accounts are still required to be rendered by the officer under oath. Sects. 2639, 2641.

Instances may perhaps be cited where it would be reasonable to conclude that Congress intended to make the salary of the collector his entire compensation, by using appropriate words to manifest such intention; but it is clear to a demonstration that the general rule is the other way, as appears from all the compensation acts passed since the Treasury Department was organized. Salary in all the acts is one of the allowances, but it will be found in every such act that fees, commissions, other allowances, or percentages are also included in the list. Proof of that proposition is found in the Revised Statutes as well as in the acts of Congress which were the subject of revision. If more be needed to confirm the proposition, it will be found in the decisions of this court, to which

reference has already been made. It is not even suggested that the acts of Congress allowing fees, percentages, and commissions are repealed, and, if not, it may well be that such allowances were intended, as heretofore, to supplement the small salaries prescribed in cases like the present.

Suppose that is so, still it is contended by the United States that the payments were voluntarily made, and that the money cannot be recovered back. Confessedly, the order was official and peremptory, and under such circumstances it may well be inferred that the party felt that, if he refused to obey, the refusal would cost him his commission. Had he refused to comply with the order or entered a protest, his act might have been regarded as contumacious, and have proved as injurious in its consequences to the incumbent of the office as if he had declined to discharge the ordinary duties of the collector. Viewed in the light of the attending circumstances, and especially of the fact that the order came from the Commissioner of the Customs, to whom he was immediately responsible, we cannot hold that the payments were voluntary, within the meaning of the judicial rule which, in consequence of the payment, denies to the party making the same the right to recover it back.

Beyond all question, the money was wrongfully exacted, and it is equally certain that in equity and good conscience it ought to be returned, or so much of it as is not barred by the Statute of Limitations. It was demanded of him by his official superior, and the act of Congress exposed him to a penalty if he refused to comply. 14 Stat. 187; Rev. Stat., sect. 3619.

Comment upon the plea of limitations is unnecessary, as the charges barred by the statute were excluded from the judgment.

Governed by these views, we hold, as the court below held, that the petitioner is entitled to recover the fees paid into the treasury after May 22, 1869, as stated in the opinion of the court, less $2.30 of tax paid on his salary, making, as properly adjusted in the opinion of the court below, the sum of $5,605.38, for which the judgment was rendered.

*Judgment affirmed.*