## UNITED STATES *v.* WILSON.

### APPEAL FROM THE COURT OF CLAIMS.

No. 296. Submitted October 26, 1897. — Decided November 29, 1897.

When a consul of the United States, in his regular accounts and settlements with the Treasury, charges himself with fees received by him as consul for which he is not obliged to account, and pays the same into the Treasury with each settlement, and retires, and makes his final settlement with the Treasury on the same basis, he cannot, in an action commenced in the Court of Claims three years after his retirement, recover back such payments, but they will be regarded as wholly voluntary payments.

THE case is stated in the opinion.

*Mr. Attorney General* and *Mr. Felix Brannigan* for appellant.

*Mr. John S. Mosby* for appellee.

MR. JUSTICE PECKHAM delivered the opinion of the court.

The Court of Claims in this case gave judgment in favor of the appellee upon these facts: Thomas B. Van Buren, a citizen of the United States, was appointed consul-general of the United States at the port of Yokohama, Japan, and held office from June, 1874, until June, 1885. While at Yokohama, Mr. Van Buren received fees for certifying invoices of merchandise shipped from that port through the United States in bond to foreign countries amounting to the sum of $4115, which fees were paid into the Treasury of the United States under the rules, regulations and requirements of the Departments of State and Treasury, requiring fees to be so accounted for and paid to the United States. There were 1646 of these invoices. Of the merchandise so shipped, that covered by 523 of the invoices was stopped in transit, for consumption in the United States without further consular certificates, and the declarations or invoices and certificates made by the consul were accepted by the customs officers of the United States as sufficient. The fees collected for certifying these 523 invoices amounted to $1307.50. The merchandise described in 478 of the 1646 invoices passed in transit through the United States to foreign countries, and was exported from the United States. The fees collected for certifying these invoices amounted to $1195. With regard to 645 of the 1646 invoices, there was no evidence either that the merchandise described in the invoices was stopped in transit and entered for consumption in the United States, or that it passed in transit through the United States to foreign countries. The fees collected for certifying these invoices amounted to $1612.50. Mr. Van Buren's accounts for the total of all these among other fees were settled at the Treasury Department, and in the settlements he was charged with these as for official fees.

The Court of Claims found that it was not shown that the reason for paying said fees into the Treasury was to avoid controversy with any department of the Government, or that Mr. Van Buren made any demand to have the fees refunded to him, or credited to him before said accounts were finally set-

tled, or that before the final settlement of his accounts at the Treasury Department he made any objection or protest against said fees being charged to him as official fees. The court gave the claimant judgment for the total of the three sums above mentioned, being $4115.

The judgment in this case was mainly based by the court below upon the case of *United States* v. *Mosby*, 133 U. S. 273, and it was there held that the invoices referred to in sections 2853 and 2855, Revised Statutes, either as they stood originally, or as they were amended by the act of June 10, 1880, did not include invoices for the shipment of merchandise in transit through the United States to other countries, and that the law did not require a consul to issue certificates in such cases; that no provision was made for a fee for them in the regulations of 1874, or those of 1881, and that it did not appear that the regulations of the Treasury Department required a consul to perform any duty in relation to such goods. The claim of the claimant in regard to such fees was allowed as a proper claim against the Government.

It is stated in the brief of counsel for the Government herein that in the *Mosby case* neither the Court of Claims nor this court was given the benefit of any information as to what transit invoices were, and it is now said that both the courts were mistaken in holding that the invoices in the *Mosby case* were not those referred to in the above-numbered sections of the Revised Statutes; and it is said that it now appears by the evidence before the court that such invoices are the identical invoices described by those sections, and that section 2860, in providing that, " no merchandise imported from any foreign place or country shall be admitted to an entry unless the invoice presented in all respects conforms to the requirements of sections 2853, 2854 and 2855, and has thereon the certificate of a consul, vice-consul or commercial agent in those sections specified," makes it necessary to have the consular certificate given in this case.

We are not now called upon to question the decision in the *Mosby case*. We think there is another ground upon which to base a reversal of the judgment herein, which is, that the

payments made by Mr. Van Buren of the fees covered by his claim were wholly voluntary, and that the general rule applicable to voluntary payments should be enforced.

The petition in this case was not filed until the 30th of March, 1888, and Mr. Van Buren's term of service expired in June, 1885. From the commencement of that service in 1874 up to the termination of his office and the final settlement of his accounts, no whisper of any claim on his part against the Government was ever heard from Mr. Van Buren. It does not appear that he had the least doubt that the Government was entitled to all the fees paid over by him to it, and in all the various settlements of his accounts with the Treasury Department, and in his correspondence, so far as this record shows, no claim was ever made or hint given on his part that he had the least title to retain these fees or to recover them back if paid to the Government. There is no pretence that he paid the fees into the Treasury to avoid a controversy with any department of the Government, or that he ever made any objection or protest against the fees being charged to him as official fees. The Court of Claims so finds in substance. If a voluntary payment can be made to the Government, it seems to us that this is such a case, and unless it be declared that the law of voluntary payments is not applicable to the case of a payment by an official to the Government, we think the payments made by the original claimant were voluntary. This is not a case of an order or direction for the payment of these moneys, given to Mr. Van Buren by the officers of the Treasury or State Departments; nor is it a case where the failure to pay the moneys might be regarded as disobedience to the peremptory order of a superior officer; nor a payment under duress. The facts show nothing but a voluntary payment of money to the Government, without claim of any right to retain one penny of it.

In *United States* v. *Lawson*, 101 U. S. 164, the collector received an order in writing from the commissioner of customs, his superior, requiring him to account for all fees received by him as collector. Under that order he paid the fees in controversy into the Treasury, and it was held that

having thus paid them pursuant to a peremptory order of his superior officer, he was not precluded from thereafter recovering them in a suit against the United States.

To the same effect is *United States* v. *Ellsworth,* 101 U. S. 170, where the ruling in the *Lawson case* is followed. In the *Ellsworth case* the court said, after referring to the penalties for non-compliance with the requirements of the law in paying over moneys: "Viewed in the light of these penal provisions, the payments in question made under the peremptory order of the commissioner cannot be regarded as voluntary in the sense that the party making them is thereby precluded from maintaining an action to recover back so much of the money paid as he was entitled to retain. Call it mistake of law or mistake of fact, the principles of equity forbid the United States to withhold the same from the rightful owner."

In both of the cases, in addition to the general law upon the subject of moneys received for the use of the United States to be paid into the Treasury, there was a distinct and peremptory order that the moneys in question should be paid, and it was in compliance with such order from a superior officer that the moneys were paid.

In *Swift Company* v. *United States,* 111 U. S. 22, the payments were held to be not voluntary because the purchaser of the stamps from the Government had to take them on the terms which the Government imposed or else go out of business. In that case, however, it appeared that the leading manufacturers of matches, among whom was William H. Swift, (who upon the organization of the claimant corporation in 1870 became one of its large stockholders and treasurer,) had made repeated protests to the officers of the Internal Revenue Bureau against the methods adopted by it in computing commissions for proprietary stamps sold to those who furnished their own dies and designs. It appeared that the rule of the department was one adhered to during the whole time of its existence, and it was announced by the Internal Revenue Commissioner that such ruling would not be altered, and as it was necessary for those in the business to have the stamps in order to continue their business, it was held by this

court that they were not obliged to continuously protest, and that settlements made with the Treasury officials upon the basis of the correctness of the custom of the department in regard to the sale of stamps and commissions thereon did not bar the claimant's right to recover the moneys which the department ought to have paid but did not; that the position of the parties was such as to render these continuous protests unnecessary. Various cases are cited by Mr. Justice Matthews, in delivering the opinion of the court, showing what amounts to an involuntary payment.

In the *Mosby case, supra,* it appears that the claimant asserted his right to the moneys and had correspondence with the officers of the department in relation thereto, and only paid the moneys to avoid a contest with his superior officers.

Nothing in any case cited is inconsistent with the view that the payments in this case were wholly voluntary in their nature, and as such cannot be recovered back.

For these reasons, without considering other questions appearing in the record, we think the judgment below should be

*Reversed, and the case remanded to the Court of Claims with instructions to dismiss the petition.*