UNITED STATES *v.* NEW YORK CENTRAL RAILROAD COMPANY, LESSEE.

UNITED STATES *v.* NEVADA COUNTY NARROW GAUGE RAILROAD COMPANY.

Nos. 238 and 304. Argued February 21, 25, 1929.—Decided March 11, 1929.

*Solicitor General Mitchell,* with whom *Messrs. Joseph Stewart, George C. Butte* and *Robert P. Reeder,* Special Assistants to the Attorney General, were on the brief, for the United States.

*Messrs. Frederick H. Wood* and *George H. Fernald, Jr.,* with whom *Messrs. Clarence M. Oddie* and *Ben B. Cain* were on the brief, for respondents.

Mr. Justice Holmes delivered the opinion of the Court.

On February 25, 1921, and June 30, 1921, the respondent railroads respectively filed applications with the Interstate Commerce Commission for a readjustment of the compensation for services in carrying the mails rendered by them, from dates before the applications and for the future. The Commission at first expressed an opinion that it had " authority to establish rates only for the future " but made orders establishing rates as fair and reasonable after the date of the orders. On further hearings, however, it made new orders establishing the same rates as fair and reasonable for the times between the filing of the applications and the orders previously made. 85 I. C. C. 157. 95 I. C. C. 493. See 144 I. C. C. 675. The railroads applied to the Postmaster General for payment as ordered by the Commission, but their applications were refused. Thereupon they sued in the Court of Claims and got judgments for compensation computed according to the last orders of the Commission. 65 Ct. Cls. 115. The United States asked and obtained a writ of certiorari from this Court.

The ground taken by the United States is that the Interstate Commerce Commission had been given no authority to change the rates of payment to be received by the railroads for any time before its orders went into effect. The question is one of construction which requires consideration not of a few words only but of the whole Act of Congress concerned. This is the Act of July 28, 1916, c. 261, § 5; 39 St. 412, 425-431 (C., Tit. 39, ch. 15, where the long § 5 is broken up into smaller

sections) which made a great change in the relations between the railroads and the Government. Before that time the carriage of the mails by the railroads had been regarded as voluntary, *New York, New Haven & Hartford R. R. Co.* v. *United States,* 251 U. S. 123, 127, now the service is required (C., Tit. 39, § 541); refusal is punished by a fine of $1,000 a day (C., Tit. 39, § 563), and the nature of the services to be rendered is described by the statute in great detail. Naturally, to save its constitutionality there is coupled with the requirement to transport a provision that the railroads shall receive reasonable compensation. The words are "All railway common carriers are hereby required to transport such mail matter as may be offered for transportation by the United States in the manner, under the conditions, and with the service prescribed by the Postmaster General and shall be entitled to receive fair and reasonable compensation for such transportation and for the service connected therewith." The Government admits, as it must, that reasonable compensation for such required services is a constitutional right. So far as the Government has waived its immunity from suit this right may be enforced, in the absence of other remedies, not only by injunction against further interference with it but by an action to recover compensation already due. Accordingly the statute provides for application from time to time to the Interstate Commerce Commission to establish by order a fair, reasonable rate or compensation to be paid at stated times. C., §§ 542, 551, 554.

We assume that while the railroads perform these services and accept pay without protest they get no ground for subsequent complaint. *American Smelting & Refining Co.* v. *United States,* 259 U. S. 75, 78. But the filing of an application expresses a present dissatisfaction and a demand for more. A further protest would be a super-

fluous formality. If the claim of the railroads is just they should be paid from the moment when the application is filed. In the often quoted words of Chief Justice Shaw, "If a pie-powder court could be called on the instant and on the spot the true rule of justice for the public would be, to pay the compensation with one hand, while they apply the axe with the other." *Parks* v. *Boston,* 15 Pick. 198, 208. In fact the necessary investigation takes a long time, in these cases years; but reasonable compensation for the years thus occupied is a constitutional right of the companies no less than it is for the future. *Oklahoma Natural Gas. Co.* v. *Russell,* 261 U. S. 290, 293. This being so, and the Interstate Commerce Commission being the tribunal to which the railroads are referred, it is a natural incident of the jurisdiction that it should be free to treat its decision as made at once. Obviously Congress intended the Commission to settle the whole business, not to leave a straggling residuum to look out for itself, with possible danger to the validity of the Act. No reason can have existed for leaving the additional annoyance and expense of a suit for compensation during the time of the proceedings before the Commission, when the Commission has had that very question before it and has answered it, at least from the date of its orders. We are quite aware that minutiae of expression may be found that show Congress to have been thinking of the future. We put our decision not on any specific phrase, but on the reasonable implication of an authority to change the rates of pay which existed from the day when the application was filed, the manifest intent to refer all the rights of the railroads to the Interstate Commerce Commission, and the fact that, unless the Commission has the power assumed, a part of the railroads' constitutional rights will be left in the air.

*Judgments affirmed.*