Booth, Chief Justice,
delivered the opinion of the court:
This case is' before the court upon defendant’s demurrer to plaintiff’s petition. The plaintiff, an. Ohio corporation, on March 8, 1923, became by lawful- assignment the owner of an oil lease granting the right to prospect for oil upon *138 certain public lands in Wyoming. The original lease was consummated under section 17 of the act of February 25, 1920 (41 Stat. 437, 443), and the controversy revolves around a single provision of section 17 of the above act relating to the right to a reduction of royalties. The statute and the original lease itself provided as follows:
“ * * * such royalties, whether in value or kind, shall be subject to reduction wherever the average daily production of any oil well shall not exceed 10 barrels per day, if in the judgment of the lessor the wells can not be successfully operated upon the royalties fixed herein.”
Plaintiff’s petition alleges the following facts: That the plaintiff paid the royalties exacted by the terms of the lease and fully observed the same in all its provisions and complied with the regulations of the Interior Department with respect thereto; that during the period of time involved fourteen producing wells were drilled by the plaintiff upon the lands in question, and that for three months prior to September 1,1926, as found by the Director of the Geological Survey, the output of the wells fell below an average of 10 barrels per day. The petition further alleges that on October 23,1926, the plaintiff filed with the Interior Department an application for a reduction of the royalties mentioned in the lease as the law and the regulations of the department provided; that said application was duty considered by the department and on May 13, 1927, the prayer of the petition was granted, and the royalties reduced from and after June 1, 1927. Thereafter on November 4, 1927, the Department of the Interior gave further consideration to plaintiff’s petition for relief filed October 23, 1926, and the department’s order of May 13, 1927, and entered a new and modified order granting the plaintiff a reduction in royalties as the original order provided, but making it effective on and from November 1, 1926, the first day of the calendar month following the filing of the allowed petition for relief. The plaintiff paid the royalties stipulated in the lease up and until June 1, 1927, whereas, as is contended for herein, the plaintiff was lawfully obligated to pay no more than reduced royalties on and after November 1, 1926. *139 Subsequent to the department’s order of November 4, 1927, the plaintiff preferred its claim to the department for Repayment to it of the difference between the high royalties stipulated in the lease and the amounts due the Government under the reduced royalties, a sum conceded by both parties to be $747.49. The department, following a detailed investigation of the claim by the supervisor of oil and gas leasing operations in Wyoming, approved the claim and its allowance. Thereafter the Comptroller General, to whom the allowance of the claim was referred, in a written opinion disapproved its payment.
The petition contains two counts. The first we have stated above. The second is precisely similar in all respects except the dates and the amount involved. The second count pertains to a lease acquired by the plaintiff on June 22, 1923. Application for reduction of royalties was made on September 8, 1926, and allowed on November 4, 1927, effective as of October 1, 1926. The difference in royalties due as a repayment, if October 1,1926, is to be held the effective date of the order of reduction, is $13,776.74.
The comptroller disallowed the claim upon a holding that the portion of section 17 of the act of February 25, 1920 {supra), does not authorize a retroactive reduction in royalties. It is not quite clear in what sense it may be said the royalties were reduced retroactively. The department in _charge of'the subject matter promulgated a regulation wherein a specific method obtained for ascertaining the average production of oil wells in order to satisfy the terms of the statute with respect to an application for a reduction of royalties. This regulation provided for a three months’ period preceding the application for reduction, during which the flow of the wells was tabulated. The petition following this event operated to invoke the relief provisions of the statute, and what the Secretary was required to do was to find to his satisfaction that the facts in the petition were established, and approve or disallow as the situation warranted. His authority was to reduce the royalties if the facts sustained a reduction, and the plaintiff was entitled to the reduction whenever the conditions stated in the statute *140 came into being. Indeed, he possessed authority “ to reduce the royalty on future production when, in his judgment, the wells can not be successfully operated upon the royalty fixed in the lease.” We are unable to hold that future production is limited to the flow of the wells after the Secretary acts, and that if his action, due to the pressure of a vast volume of departmental matters, is delayed, the plaintiff must suffer a loss, when the facts indisputably entitle it to the relief sought, and the Secretary does no more than approve at a later date a state of facts which actually came into being on the date stated in the Secretary’s last letter of approval. The court is dealing with a remedial clause of a statute, one clearly designed to afford an effective remedy against a manifest injustice. Congress used the word “ 'Whenever,” obviously intending to relieve a situation as soon as it came about. Any other construction of the law would leave a deserving claimant at the mercy of inaction due to a variety of causes, and exact the payment of sums to the Government to which Congress especially said the Government was not entitled. In this case it is quite clear that the Secretary was convinced that on the date the application for a reduction was filed, the regulations of the department having been complied with, the average flow of the wells was less than 10 barrels a day, and having reached this conclusion dated it as of the date the matter reached him. Subsequently he discovered his error and corrected it, as we think he had ample authority to do, by conforming it to the facts.
A case similar to this was before the Supreme Court in United States v. New York Central R. R. Co., 279 U. S. 73. In this case the United States was contending that the Interstate Commerce Commission had been given no authority to change the rates of payment to be received by the railroads for carrying the mails for any time before its orders went into effect. In disposing of the issue in favor of the railroads, the court said:
“ In fact the necessary investigation takes a long time, in these cases years; but reasonable compensation for the years thus occupied is a constitutional right of the companies no less than it is for the future. * * * No reason can have existed for leaving the additional annoyance and expense of *141 a suit for compensation during the time of the proceedings before the commission, when the commission has had that very question before it and has answered it, at least from the date of its orders. We are quite aware that minutim of expression may be found that show Congress to have been thinking of the future. We put our .decision not on any specific phrase, but on the reasonable- implication of an authority to change the rates of pay which existed from the day when the application was filed, the manifest intent to refer all the rights of the railroads to the Interstate Commerce Commission, and the fact that, unless the commission has the power assumed, a part of the railroads’ constitutional rights will be left in the air.”
Here we have a statutory right to which the plaintiff is expressly entitled.
On October 23, 1926, the wells had been found by a three months’ test to average less than 10 barrels a day, in this case very much less, and seven months and ten days elapsed before the Secretary reached for action the first application of the plaintiff for relief. As to the second lease involved, it was one year one month and twenty-six days after the application for a reduction was filed before the Secretary acted; thus it appears from actual facts found as to an existing situation, a status which falls squarely within the words of the statute, the plaintiff was paying to the Government royalties at the rate of 25 and 33% per centum of the oil produced for a period of one year nine months and six days when the wells themselves were during this very period producing such a small quantity of oil as to render their continued operation under the terms of the lease decidedly unprofitable, if it were possible to operate them at all. The situation depicted is such a one as the statute was intended to reach. Of course the ascertainment of the facts was committed to the named officials in the act, and the relief intended was to be effective in accord with their actions, but taken in all its aspects, it is difficult to give to the law any other meaning than an intended relief from a situation when and at the time the situation described developed.
The demurrer will be overruled. It is so ordered.
Williams, Judge; LittletoN, Judge; GreeN, Judge; and Geaham, Judge, concur.