GREEN, Judge,
delivered the opinion of the court:
This is an action by the Bio Cape Line, Ltd., owner of the steamship Chinese Prince, for the recovery of $15,000, being the amount of fines imposed and collected from plaintiff by the officials of the defendant because of the failure of the master of the Chinese Prinee to detain on board fifteen alien members of his crew after an order for their detention had been issued by an immigration inspector.
Plaintiff is a British corporation and its ship, the Chinese Prinee, arrived in Boston in September 1929, having an alien crew. An immigration inspector, after inspecting the crew, served on the purser of the vessel a notice or order that twenty of the crew should be detained on board. The purser signed a receipt of the notice “Thomas Goldsworthy, purser for master.” The vessel proceeded from Boston to New York and from New York to Newport News without any further notice, but an immigration inspector at Newport News found that fifteen of the seamen who had been ordered detained at Boston were not aboard.
Furness, Withy & Company, Ltd., were the agents of the vessel at Newport News and Norfolk. Shortly after the arrival of the vessel at Newport News the agents were served with notices from the immigration inspector there that fines in the amount of $15,000 were claimed on account of the escape of the fifteen seamen, and these notices granted sixty days’ time in which a defense might be offered showing why no penalty should be imposed.
*312 On November 4 the steamship Chinese Primee was at the port of Newport News making ready to sail. The practice then in effect required the Collector of Customs on receipt of a notice of liability for such penalties to refuse clearance to the vessel until the amountclaimed in the notice had been deposited with the collector, or until bond satisfactory to the collector should be furnished. Both the collector and the agents of the vessel at Newport News were aware of this practice and in order to secure clearance of the vessel, the manager of the agents executed bonds in the amount of $15,000 conditioned on the payment of any fines incurred by the steamship Chmese Prince and found by the Secretary of Labor to be due and payable under the provisions of the Immigration Act. The bonds also recited that clearance papers could not be obtained until such liability was determined and fines and penalties paid unless a bond was filed; and, further, that the principal was to have the privilege of making such payments under protest and without prejudice to- any legal rights of recovering by appropriate action all sums so paid as fines under the bonds.
The Chinese Prince sailed from Newport News on November 5, 1929. On April 1, 1930, Furness, Withy & Company, Ltd., paid to the Collector of Customs $15,000 which was deposited in the Treasury of the United States. No protest was made to the collector at the time of this payment but demand was made for the repayment thereof on February 19, 1936.
The plaintiff alleges that the amount of the fines was illegally and wrongfully collected from it on the ground that the plaintiff was not served with notice of the order to detain the members of the crew who subsequently escaped, and that the payment of the fines was not voluntary but was made under duress in order to obtain clearance papers for the steamship Chinese Primee so that it could continue its voyage.
The defendant contends that sufficient service was made to bind the owners, and that the fines were legally imposed and voluntarily paid.
*313 The question, of whether the fines were legally collected depends on whether the notice to detain the alien seamen was served on the party from whom the fine was collected in the manner provided by law.
The statute under which the fines were imposed is section 20 (a) of the Immigration Act of 1924, c. 190, 43 Stat. 164, 8 U. S. C. 167 (a), which provides:
The owner,' charterer, agent, consignee, or master of any vessel arriving in the United States from any place outside thereof who fails to detain on board any alien seaman employed on such vessel until the immigration officer in charge at the port of arrival has inspected such seaman (which' inspection in all cases shall include a personal physical examination by the medical examiners), or who fails to detain such seaman on board after such inspection or to deport such seaman if required by such immigration officer or the Secretary of Labor to do so, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each alien seaman in respect of whom such failure occurs. No vessel shall be granted clearance pending the determination of the liability to the payment of such fine, or while the fine remains unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of a sum sufficient to cover, such fine, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs.
In Compagnie Generale Transatlantique v. Elting, 298 U. S. 217, 223, 224, it is said with reference to the imposition of a fine for failing to detain seamen after examination by the immigration officer that—
A duty so to detain does not arise unless and until such detention is required by the immigration officer. Obviously the requirement must be communicated to the one on whom the duty is to rest; otherwise he could not be regarded as “required” so to detain or as “failing” to do so.
A comparison of the facts in the case above cited with those which appear in the case at bar will show that the two cases are quite similar. In the case before us the *314 notice to detain was served upon the purser who accepted service for the master. A purser whose duties relate merely to some financial matters has no authority to bind the master. The master, however, must have known of the notice as he ordered that no shore leave be granted to the members of the crew whom the notice required to be detained. Thus the requirement was “communicated” in some way to the master. The master was thus bound but what is further said in the Compagnie Generale case, supra, shows that no one else was. The opinion in the case last cited recites:
Here the requirement was communicated to the master of the ship but was not in any way brought to the knowledge of the owner; and yet the administrative officers imposed the fine on the latter. The court below sustained this administrative action on the theory that the master of a ship represents the owner, and therefore notice given to the master may and should be imputed to the owner. But in our opinion the section does not admit of the application of that theory. It contains nothing indicative of a purpose to regard notice to one of the enumerated persons as binding the others or any of them. On the contrary, it deals with all in the same way, includes each of them in the enumeration by reason of his relation to the vessel and his authority over her, and puts each on a plane of individual duty and liability regardless of any relation of one to another.
Also:
. A master in charge who is required by the immigration officer to detain alien seamen after examination becomes thereby personally charged with a duty to detain them, and, if he fails therein, becomes personally subject to the prescribed fine. The same thing is true of the owner, charterer, agent or consignee. But none is charged with a duty so to detain unless he is notified of that requirement, and notice to one does not without more operate as notice to another.
The court also cited with approval the decision in United States v. J. H. Winchester & Co., 40 Fed. (2d) 472, to the effect that an order served only on the master of a vessel did not impose any duty on the agent and therefore he was not *315 liable for the failure to detain. The case of Lancashire Shipping Co. v. Elting, 70 Fed. (2d) 699, is cited to the same effect and the court concludes with the statement that—
Nothing in the section indicates that notice to the master and a failure by him are to be imputed to the owner and made a basis for fining the latter.
There is no evidence in the instant case that the detention notice was served upon either the agents or the owner and no claim is made that either of them had any knowledge thereof except as acquired after the escape of the seamen by reason of the notice of the proposed fine being served. It seems clear that so far as the owner or agents are concerned, the provisions of the statute as construed by the Supreme Court had not been complied with. In the case now on trial it is sought to hold the owner liable by reason of service of the notice of detention upon the master. This, under the rules laid down by the Supreme Court, cannot be done.
It is contended on behalf of defendant that the fines were paid voluntarily and having been so paid cannot be recovered.
We think that even if it had appeared that the fines were paid voluntarily, this would not prevent a recovery thereof if they were in fact unlawfully collected, but it is not necessary to so hold in the case before us. When the notices of liability were issued by the immigration inspector at Newport News together with bills for the amount thereof, copies of the notices and bills were delivered to the Collector of Customs and also to the Newport News office of the owner of the vessel. The Collector of Customs was authorized on receipt of such notices and bills to refuse clearance of the vessel until the amount named therein had been deposited with the collector, or a bond satisfactory to the collector furnished, and the notices of liability under the fine stated that the vessel would be granted clearance papers upon a deposit of the amount of the proposed fine or upon furnishing a satisfactory bond. We think that when a vessel could not obtain a clearance to continue its voyage until these conditions were complied with, the filing of the bond by the agent and *316 the subsequent payment by the owner were not such voluntary acts as to prevent the plaintiff from recovering the amount paid. The cases are so numerous supporting this holding we think it is not necessary to mention them.
It is further urged on behalf of the defendant that the action of the plaintiff in presenting to the Immigration authorities a letter from the master of the vessel giving his version of the matter constituted a full appearance in the case and ratified all the proceedings with reference to the notices. The notice of liability for the fine was directed to and served upon the agents of the owner. It advised the agents that they would be allowed a period of sixty days in which to offer a defense showing why, in their opinion, no penalty should be imposed. To this notice the agents responded enclosing a letter from the master giving reasons why, in his opinion, the fine should not be imposed. The Board of Beview considered the statement of the master, treated it as a protest against the imposition of the fine, but recommended that the penalty be imposed. There was nothing in the action taken by the agents and the master that validated the failure to make a foundation for the case by a proper service of the notice of detention. To sustain this contention on behalf of the defendant the case of United States v. S. Manessis, Master of Panamanian Steamship “Mount Ossa,” and National Surety Corporation of New York, decided November 12, 1938, by the District Court of the United States for the Eastern District of Virginia (Norfolk Division) is cited. The opinion rendered in that case shows that the notice of detention was served upon the master and the fine was imposed upon the master. But the opinion distinguishes it from the case of Compagnie Generate, supra, where, like the case at bar, neither the agents nor the owner had any knowledge of the service of the notice to detain until after the escape. The Manessis case, supra, is not therefore any authority to sustain the defendant’s contention.
The plaintiff also contends that the notice of detention was not such as was required by the statute. It is said that the statute requires the notice to be given by “such *317 immigration officer or the Secretary of Labor,” and that these words refer to “the immigration officer in charge at the port of arrival” mentioned in the first part of the section under which the fines were imposed as set out above. The notice was signed by the immigration inspector who is not the immigration officer in charge at the port. We are inclined to the view that, in line with what is quoted from the Supreme Court decision, the statute must be literally complied with in respect to the notice itself as well as the manner of service, but in view of the fact that knowledge of the detention order was not brought to the agents or owner until after the escape, we do not rest our decision upon the insufficiency of the notice itself.
Lastly, the defendant contends that this court is without jurisdiction to entertain the action. More specifically stated, the defendant’s contention is that this suit is on a contract implied in law and is not maintainable under the Tucker Act. In support of this contention the defendant cites United States v. Algoma, Lumber Co., 305 U. S. 415; Alabama v. United States, 282 U. S. 502; and Baltimore Mail Steamship Co. v. United States, 76 Fed. (2d) 582. The cases relied upon by defendant involve altogether different facts from those which appear in the instant case. In fact, the nature of the actions and the circumstances of each case are so dissimilar to the case at bar that we do not think it is necessary to review them. The decisions therein furnish no foundation for the contention made by the defendant.
Nor do we think it is necessary to consider defendant’s contention that suits to recover penalties under the immigration statutes are not maintainable under the Tucker Act. In many such cases the courts have entered judgment in favor of the plaintiff,' and while the matter has not been directly passed upon by the Supreme Court the judgments of the lower courts have been affirmed.
Plaintiff is entitled to recover the amount of fines paid and judgment will be entered accordingly.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Booth, Chief Justice, concur.