## DEPPE et al. v. LUFKIN.

### No. 3605.

Circuit Court of Appeals, First Circuit.

Dec. 30, 1940.

Charles R. Hickox, of New York City (Delbert M. Tibbetts and Kirlin, Campbell, Hickox, Keating & McGrann, all of New York City, and Bingham, Dana & Gould, of Boston, Mass., on the brief), for appellants.

Edward O. Gourdin, Asst. U. S. Atty., of Boston, Mass. (Edmund J. Brandon, U. S. Atty., of Boston, Mass., on the brief), for appellee.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAHONEY, Circuit Judge.

This action was brought for the recovery of certain immigration fines which had been imposed by the Secretary of Labor under Section 20(a) of the Immigration Act of 1924, 43 Stat. 164, 8 U.S.C.A. 167 (a),[1] and collected by the Collector of Customs of the Port of Boston. The District Court, sitting without a jury, heard the case on an agreed statement of facts and entered judgment for the defendant. The plaintiff has appealed.

When the action was begun Armement Deppe, a Belgian corporation and owner of the S. S. Louvain, was the original plaintiff. Subsequently the declaration was amended and Furness, Withy & Co., Ltd., the agent for the original plaintiff, was added as a party plaintiff. The original defendant, who was the Collector of Customs, died, and the executrix of his estate was substituted as party defendant. It has been stipulated that if the action can be maintained, Furness, Withy & Co., Ltd., is the proper plaintiff. Hence, in this opinion when we use the word "plaintiff" we refer to Furness, Withy & Co., Ltd.

The steamship Louvain arrived at the port of Boston from Antwerp on August 13, 1926, and the immigration inspector found that eleven alien members of the crew were not bona fide seamen and directed that they be detained on the vessel. The order to detain was dated August 13, 1926, and addressed to the "owner, agent, consignee, master, or officer in charge of" the vessel and was served on the master. While the vessel was still at Boston, four of the men who had been ordered detained escaped. On August 24, 1926, notice of liability for fines amounting to $4,000 on account of failure or refusal to detain the said aliens was served on Furness, Withy & Co., Ltd., as agent of the vessel. The notice of liability stated that it appeared that Furness, Withy & Co., Ltd., agent, had failed or refused to detain on board the vessel four of the aliens and that a fine should be imposed under the provisions of Section 20(a) of the Immigration Act of 1924; that if a hearing was desired as to whether the fine should be imposed, sixty days from the date of the notice would be allowed for such purpose; and that the vessel would be granted clearance papers upon condition that there be deposited with the Collector of Customs at Boston prior to the sailing the sum of $4,000, or a bond for

[1] "§ 167. (a) Detention of seamen on board vessel until after inspection; detention or deportation; penalty; clearance to vessels. The owner, charterer, agent, consignee, or master of any vessel arriving in the United States from any place outside thereof who fails to detain on board any alien seaman employed on such vessel until the immigration officer in charge at the port of arrival has inspected such seaman (which inspection in all cases shall include a personal physical examination by the medical examiners), or who fails to detain such seaman on board after such inspection or to deport such seaman if required by such immigration officer or the Secretary of Labor to do so, shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $1,000 for each alien seaman in respect of whom such failure occurs. No vessel shall be granted clearance pending the determination of the liability to the payment of such fine, or while the fine remains unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of a sum sufficient to cover such fine, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs."

that amount as security for the payment of the fines should they be imposed.

At the time the notice of liability was served on Furness, Withy & Co., Ltd., the steamship Louvain was still in the port of Boston, and desirous of obtaining clearance in order to sail therefrom. At this time there was on file in the office of the Collector of Customs a vessel term bond for $50,000, which had been executed on December 31, 1925, by H. L. Porter, as the principal obligor, the American Surety Company, as surety, and the United States of America, obligee. It recites that certain vessels consigned to the principal were expected to enter at and to clear from the port of Boston and it was conditioned to pay, among other things, as the parties have agreed, all immigration fines "found legally due". H. L. Porter was the manager of Furness, Withy & Co., Ltd. The trial judge found that as a condition to permitting the vessel to clear the port the defendant, collector of customs, made a charge against this bond to secure the $4,000 of fines. After this charge was made the vessel was given clearance and sailed. Thereafter, on August 27th, Furness, Withy & Co., Ltd., wrote to the Secretary of the Treasury requesting that the fines be not imposed and gave in substance as its reason that compliance with the notice of detention was impracticable. Under date of September 20, 1926, the Bureau of Immigration wrote to the Commissioner of Immigration in Boston recommending that the penalty be imposed. In October, 1926, the fines of $4,000 were imposed and on October 15, 1926, demand for payment was made by the collector of customs on Furness, Withy & Co., Ltd. Payment was made by it on October 19, 1926, and the amount so paid was deposited into the Treasury of the United States. At the time of payment, the vessel term bond was still on file and still charged with the fine.

The trial judge ruled that the penalty was not validly imposed. The notice to detain was served on the master and not on the plaintiff, as agent, and the notice of liability was served on the plaintiff, as agent, and not on the master. The judge found that because of this procedural defect in the service, the collector could not successfully have maintained an action to collect the fines. However, he did find that the payment of the fine was voluntary, not the result of duress, and that it was not made under protest.

The question raised on this appeal is whether the plaintiff is entitled to recover from the defendant the $4,000 fines plus interest which were paid on the demand of the collector of customs. In our opinion the plaintiff is not entitled to recover.

There is no question, and we do not understand the defendant to have raised any, but that the trial court was correct in holding that the plaintiff had a good defence to any attempt on the part of the collector to collect the fines. The Supreme Court has held that such a fine cannot be collected unless the notice to detain the aliens was served upon the party upon whom the fine has been imposed. Compagnie Generale Transatlantique v. Elting, 1936, 298 U.S. 217, 56 S.Ct. 770, 80 L.Ed. 1151. The case further holds that notice to the master of a vessel is not notice to its owners or agents, as in this case, since for the purposes of the statute the former is not the agent of the latter. The case has been followed in several opinions. Cunard S. S. Co. v. Elting, 2 Cir., 1938, 97 F.2d 373, 377; Law et al. v. United States, D.C.Mass.1937, 18 F.Supp. 42. It is clearly the law that owing to the procedural defects in the serving of the various notices, the collector could not successfully have forced payment of the fines by the plaintiff.

However, though the defendant admits he could not have forced collection of the fines from the plaintiff because of procedural difficulties, he insists that the payment of the fines by the plaintiff was not made under protest but was a voluntary payment which precludes recovery in this action. The plaintiff, on the other hand, argues that the payment was made under protest, and was involuntary because made under duress. We agree with the defendant.

There is no evidence at all that the payment of the fines was made under protest. The plaintiff's letter of August 27, 1926, to the Secretary of the Treasury requested remittance of the fines on the ground that the master had done everything practicable to comply with the order of detention. This is not a protested payment of fines; it is a protest against the proposed imposition of liability for payment, an assertion that the fines have not been incurred. The ground alleged to justify remittance was not an admissible one since due care is no defence to a fine for failure to detain aliens after service

of an order so to do. The Bureau of Immigration properly rejected the protest against the imposition of the fines and ordered that they be imposed. The defendant, by letter of October 15, 1926, notified the plaintiff of the final imposition of the fines and demanded payment. It should be noted that in the first letter of the Immigration Service to the plaintiff notifying it of the proposed fines, dated August 24, 1926, the plaintiff was allowed sixty days to request a hearing as to whether the fines should be imposed. When payment was demanded on October 15, 1926, there were still nine days left to the plaintiff to request a hearing and produce good reason why the fines should not be imposed. No request for a hearing was made; the plaintiff in no way indicated that it did not accept as correct the final determination of the Bureau of Immigration. On October 19, 1926, five days before the expiration of the period within which a hearing could be requested, the plaintiff paid the fines. There is no evidence that any protest as to the invalidity of the fines was made at the time of payment. In the light of the admitted facts, the trial judge was obviously correct in finding that the payment of the fines was not made under protest.

■ The plaintiff further argues that the payment was involuntary and made under duress. The basis of the contention appears to be that the plaintiff was forced to pay the fines in order to get clearance for its vessels and prevent the serious curtailment of its business. We do not believe that there was any threat to deny clearance papers to the plaintiff's ships in the present circumstances. The statute provides that: "No vessel shall be granted clearance pending the determination of the liability to the payment of such fine, or while the fine remains unpaid, except that clearance may be granted prior to the determination of such question upon the deposit of a sum sufficient to cover such fine, or of a bond with sufficient surety to secure the payment thereof approved by the collector of customs." If there were no statutory provision for the posting of a bond, there might be some argument that the payment in this case was made under duress. See, Oceanic Navigation Co. v. Stranahan, 1909, 214 U.S. 320, 29 S.Ct. 671, 53 L.Ed. 1013. But the statute here in question does provide for the posting of a bond, and thus an entirely different situation is presented.

As stated in the facts, eight months before the happening of the events on which this action is grounded, a bond conditioned to pay, among other things, all immigration fines found legally due, was posted by the plaintiff's manager. There was nothing involuntary about the posting of this bond; there was certainly no duress involved. It was a practical business-like action done to forestall any possible interruption of normal sailings because of immigration complications. As a condition to permitting the S.S. Louvain to clear port, the defendant made a charge against this bond to secure the $4,000 of fines. As far as can be ascertained this "charge" was nothing more than a notation on the bond or a bookkeeping entry that it was security for the payment of these fines.

■ In charging the bond, the collector did nothing more than the plaintiff had voluntarily provided that he should do by posting the bond. To secure the payment of imposed fines and to insure the free clearance of its vessels was the sole purpose of the bond. The charging of the bond could in no wise be considered a payment under duress. It is conceivable that if the plaintiff had deposited the $4,000 with the collector to secure the clearance of the vessel that it might possibly be considered to have been done under duress since it could have been paid immediately into the Treasury as soon as the Bureau of Immigration decided that the fines were properly imposed. But the deposit of a sum of money and the charging of a bond are quite different. The charging of a bond has no definitive character. No rights are thereby changed or adjudicated. A bond is merely a promise to pay, and when the defendant demanded payment the plaintiff could have refused and allowed the defendant to bring suit on the bond. In that suit the plaintiff could have raised any and all defences to the imposition of the fines, including the defect of notice. Bank Line, Ltd. v. United States, 2 Cir., 1938, 96 F.2d 52. The plaintiff did not rely on its defences to an action on the bond. On the demand of the defendant it paid the fines with no protest of any kind. In the Bank Line, Ltd., case no recovery was allowed even when such protest was made. We cannot find that the payment by the plaintiff was in any manner involuntary or made under duress. Cf. Cunard S. S. Co. v. Elting, supra. It did not refuse payment and defend on the bond; it did not even

enter a formal protest at the time of payment to indicate to the defendant that it had not completely acquiesced in the validity of the fines and its liability therefor. The plaintiff can hardly expect to take advantage of the defendant's procedural errors while at the same time ignoring its own failure to safeguard its rights.

The case of Rio Cape Line, Ltd. v. United States, 1939, 89 Ct.Cl. 307, is squarely in point for the plaintiff. It involved the same company which took exactly the same steps. The only factual difference which might possibly be of any significance is that in that case a bond was specially posted to secure the clearance of the vessel in question instead of a charge made against a previously posted bond. While this may look slightly more like duress, we do not believe it to be sufficient to differentiate the cases. We do not agree with the Court of Claims. It apparently gave no consideration to the fact that the giving of a bond settled nothing at all to the disadvantage of the company but left all defences open. The Court substantiated its assertion that the filing of the bond and its subsequent payment were involuntary by nothing more than the bald statement that the authorities supporting it were too numerous to require mention. What those cases are we do not know; but the reasons above convince us that the payment was not involuntary, and the cases cited by the plaintiff to the contrary are distinguishable.

In Oceanic Navigation Co. v. Stranahan, supra, there was no provision for the posting of a bond as an alternative to payment or refusal of clearance. In the other cases cited there were special instances of pressure and fear with no alternative to safeguard rights and prevent the threatened evils. See, e.g., United States Fidelity Co. v. Sandoval, 1912, 223 U.S. 227, 32 S.Ct. 298, 56 L.Ed. 415 (threat of Governor to revoke license); Atchison, etc., Ry. v. O'Connor, 1912, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436, Ann.Cas.1913C, 1050 (automatic forfeiture of right to do business plus monetary penalties on failure of payment); United States v. Lawson, 1879, 101 U.S. 164, 25 L.Ed. 860 (fear of dismissal on failure to comply). In United States v. New York Central R. R., 1929, 279 U.S. 73, 49 S.Ct. 260, 73 L.Ed. 619, the filing of the application for increased rates was considered a good protest against present rates. Nothing which can be regarded as a protest against payment was filed here. The objection made to the imposition of the fines was invalid, and on its rejection no action was taken by the plaintiff indicating continued resistance. The plaintiff also relies on Swedish-American Line v. United States, 1936, 83 Ct.Cl. 63. There was no evidence in the instant case of any practice of the collector of the port of Boston to refuse clearance to vessels after their next return to port, and the willingness of the defendant to charge the bond indicates quite the contrary. To hold that the filing of a bond and subsequent unprotested payment is an involuntary payment under duress is to destroy entirely the usefulness of the provision for filing bonds. This was undoubtedly made to provide for exactly this situation, to safeguard the rights of the United States and still forestall the need of payment of a disputed fine under pressure of the necessity of obtaining clearance papers.

The plaintiff further contends that even if the payment was voluntary it is entitled to restitution since the defendant could never have enforced the liability, and the payment was erroneously made. The argument is that on grounds of natural justice and equity, the plaintiff should prevail. We do not agree. In our view, the equities favor the defendant.

The failure to detain the aliens imposed a liability on someone for payment of the fines. Had notice to detain been served on the plaintiff or notice of the liability upon the master, the fine would have been collectible from the master or the plaintiff. Had liability against the master been perfected, the defendant, since he had previously charged the bond, would undoubtedly have recovered on the bond which was conditioned to "promptly pay any dues, charges, penalties or other sums found legally due the United States from any master or owner of said vessels in relation thereto". If payment had been forced on the bond, the plaintiff probably would have been answerable to the obligor, its manager, or the surety since there is a presumption that the former did not procure the bond on his own behalf but as part of the plaintiff's business. Bank Line, Ltd. v. United States, supra.

Therefore, if the period has not yet expired, the government can still serve notice of the liability on the master and recover

on the bond. The plaintiff would then be answerable over to the obligor. Thus the result of a judgment for the plaintiff would be a circuity of action. Bank Line, Ltd. v. United States, supra. In view of the unambiguous condition of the bond and the certainty of recovery thereunder, it is extremely unlikely that the government would proceed directly against the master.

If, on the other hand, the government is barred from rectifying its procedural mistakes by serving notice on the master of liability for the fines, a recovery by the plaintiff is patently unconscionable. Since the Regulations require the notice of intention to impose the fine to be served "promptly", the passage of six years from the plaintiff's payment until the bringing of the suit must surely have barred the government from proceeding against the master with a new service of notice. The plaintiff's payment was made voluntarily and without protest. The objection made to the imposition of the fines was invalid. No objection was made on the grounds of defect in the notice. As far as the government knew, the plaintiff recognized the validity of the imposition of the fines. To allow recovery to the plaintiff in such circumstances would allow it to pay without protest, hold back until the period of limitations barred the government from rectifying its procedural mistakes, and then without notice recover the amount paid. Such action would successfully avoid the fines incurred, and the plaintiff ought not now in good conscience to be allowed to assert the technical defect in the notice after it had objected solely on another ground while there was yet time for the defendant to have served a proper notice. There would be no equity in such a result.

■ It may be the plaintiff's position that there is no statutory requirement that in order to recover the payment must have been made under protest or duress and that therefore recovery can be had of a voluntary payment under the general principles of quasi-contract where the payment was made under mistake of law. At the time payment was made by the plaintiff the courts had not yet decided that the notice to detain and notice of liability had to be served on the same person. It is probable, then, that the plaintiff mistakenly considered itself legally subject to the fines on the rejection of its unsound protest. However, it is clearly the law that where there is no mistake of fact there can be no recovery of fines or taxes voluntarily paid under mistake of law. United States v. Gettinger, 1927, 272 U.S. 734, 47 S.Ct. 276, 71 L.Ed. 499; United States v. Wilson, 1897, 168 U.S. 273, 18 S.Ct. 85, 42 L.Ed. 464; Elliott v. Swartwout, 1836, 10 Pet. 137, 153, 9 L.Ed. 373; Blumenthal v. United States, D.C. S.D.Cal. 1925, 4 F.2d 808; cf. United States v. Holland-American Lijn, 1920, 254 U.S. 148, 41 S.Ct. 72, 65 L.Ed. 193. The authorities seem uniform on this point. See, Cooley, Taxation, (4th ed. 1924) §§ 1276, 1281, 1282, 1294; Field, The Recovery of Illegal and Unconstitutional Taxes (1932) 45 Harv.L.Rev. 501, 511; Restat. Restitution, §§ 45, 46 (Comment c), 75; Annotation, 26 A.L.R. 1523. There is no merit in the plaintiff's contention.

The judgment of the District Court is affirmed.